STATE OF NORTH CAROLINA v. GAYLE FRANKLIN COURTNEY

No. 7526SC21

(Filed 16 April 1975)

1. **Criminal Law § 161— exceptions — requirement of separate numbering**
    Rule 19 (c) of the Rules of Practice of the Court of Appeals provides that all exceptions relied on shall be grouped and separately numbered.

2. **Constitutional Law § 30— denial of speedy trial — determining factors**
    Four interrelated factors bear upon the question whether defendant has been denied his right to a speedy trial: the length of the delay,

State v. Courtney

the cause of the delay, waiver by the defendant, and prejudice to the defendant.

3. **Constitutional Law § 30— 10½ month delay between offense and trial — no denial of speedy trial**

Defendant was not denied his right to a speedy trial where the evidence tended to show that the offense occurred on 26 September 1973, a warrant was issued and defendant was arrested on 25 October 1973, defendant was determined to be indigent and counsel was appointed to represent him on 30 October 1973, a preliminary hearing was scheduled for 19 November 1973 and later continued by the State, without opposition from defendant, until 19 December 1973, on that date the State took a *nolle prosequi* with leave because a material State's witness was not available, on 25 March 1974 defendant filed an application that cause be shown why a writ of mandamus should not issue for the matter to be set for trial and final disposition made, on 2 April 1974 the resident judge of the district informed defendant that since the charge against him had been nol prossed, there was no charge presently existing against him, on 8 July 1974 the solicitor sent a bill of indictment to the grand jury and the grand jury returned a true bill against the defendant, defendant's case was set for trial on 11 September 1974, and during pre-arraignment proceedings on 9 September 1974 defendant moved for dismissal of the charges against him for failure of the State to grant him a speedy trial.

4. **Searches and Seizures § 1— evidence found during hospital examination — no search — admissibility of evidence**

The trial court in this prosecution for manslaughter did not err in allowing into evidence vegetable material and cigarette paper found on defendant's person while he was being examined at the hospital since these items were not the fruits of an illegal search.

5. **Automobiles § 112— manslaughter case — opportunity to observe defendant — opinion testimony as to speed admissible**

In a prosecution for manslaughter where the evidence tended to show that defendant was operating his vehicle at a high rate of speed and that he swerved and almost hit several vehicles, the trial court did not err in allowing a witness to give his opinion as to the speed of defendant's automobile immediately preceding the collision since the witness had ample opportunity to observe the defendant's automobile.

6. **Criminal Law § 52— hypothetical question — objectionable form — no answer given — no prejudice**

Defendant was not prejudiced by the asking of an unanswered hypothetical question, even if the form of the question was objectionable.

APPEAL by defendant from *Falls, Judge*. Judgment entered 11 September 1974 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 18 March 1975.

Defendant was charged with manslaughter. Upon his plea of not guilty, the jury returned a verdict of guilty of involuntary manslaughter. From judgment sentencing him to imprisonment for a term of not less than 7 years nor more than 10 years, the sentence to commence at the expiration of the sentence imposed in case No. 72CR10185, defendant appealed.

Evidence for the State, considered in the light most favorable to it, tended to show that on 26 September 1973 at approximately 11:30 p.m. a light blue Ford was observed by several witnesses travelling west in the eastbound lane of Central Avenue in Charlotte at a high rate of speed; that the automobile swerved and almost hit several vehicles, and the same blue Ford automobile was later seen at the scene of an accident. Another witness was travelling down Central Avenue at approximately the same time when he observed an automobile travelling at a high rate of speed toward him in his lane of traffic; that he blinked his headlights a few times but the automobile kept coming toward him; and that he swerved to the left to avoid the oncoming car because he "could not run off the road to the right side because of the telephone poles". A Mercury automobile was behind this witness at the time, and immediately after the witness swerved to avoid the oncoming automobile, the witness testified he heard "this 'BAM' like two cars hit" and then looked around to see "steam going up". The witness further testified that following the collision, he observed the defendant seated upright under the steering wheel of the automobile he had swerved to avoid and that no other person was in that automobile at the time of the collision.

A police officer testified that upon arriving at the scene of the accident he "observed a 1973 Mercury headed into town on Central Avenue which had been wrecked" and "a 1966 Ford headed out of town which had been wrecked"; that the defendant was sitting under the wheel of the 1966 Ford and the deceased was sitting at the steering wheel of the Mercury. Another officer corroborated the police officer's description of the scene of the accident and noted that the Ford was on the wrong side of the road. The officer further testified she found the defendant in the front seat of the Ford and "noticed an odor of alcoholic beverage about his person and the car".

An employee of the Charlotte Ambulance Service, who transported the defendant to the hospital testified that in the course of disrobing the defendant for treatment, he found "a

clear plastic bag, like a baggy, that had what looked like tobacco in it". A surgical technician also testified that he was present when "a small clear plastic bag containing a green leafy substance" was found in the defendant's left-hand front pants pocket. A chemist with the Charlotte Mecklenburg Crime Laboratory later testified that he performed a chemical analysis on the substance found. He stated that in his opinion the substance was marijuana.

The Medical Examiner for Mecklenburg County, and the doctor who examined the deceased at Charlotte Memorial Hospital following the accident, testified regarding the injuries received by the deceased. Each doctor testified he had an opinion, satisfactory to himself, as to the cause of the death of the deceased.

A voluntary statement made by the defendant to police officers following the accident was introduced into evidence by the State following a voir dire. In the statement, defendant admitted he sometimes smoked marijuana and took LSD and that he had previously had two flashbacks from taking LSD. However, defendant denied smoking any marijuana, taking any LSD, drinking any alcohol or experiencing a flashback on the night of the accident. He stated that "[m]y mind is almost a complete blank from the time I turned off Arnold Dr. onto Central except I do remember doing 40 MPH and [seeing] 4 headlights after I crossed Eastway Dr." Defendant also stated that he did not remember being on the wrong side of the road.

A resident surgeon at Charlotte Memorial Hospital testified on behalf of the defendant. When he examined the defendant, the witness testified that he detected an odor of alcohol about the defendant but that the defendant was alert and answered all his questions quickly and satisfactorily. The doctor further testified that in his opinion the mental and physical faculties of the defendant were not significantly impaired.

Additional facts necessary for decision are set forth in the opinion.

*Attorney General Edmisten, by Assistant Attorney General Parks H. Icenhour, for the State.*

*James L. Roberts, for defendant appellant.*

MORRIS, Judge.

[1]   Defendant erroneously groups three exceptions under his first assignment of error. Exception No. 1 relates to the denial of defendant's motion to dismiss for failure on the part of the State to grant him a speedy trial, while exceptions No. 2 and 3 relate to the denial of his motions for judgment notwithstanding the verdict and for a new trial, respectively. These exceptions present distinct and different questions of law. " . . . This method of grouping exceptions does not conform with the Rules of Practice in this Court. Rule 19 (c) provides that all exceptions relied on shall be grouped and separately numbered. In interpreting its cognate rule, our Supreme Court has held that '[t]his grouping of the exceptions assigned as error (sometimes for brevity also called "assignments of error") should bring together all of the exceptions which present a single question of law.' *Conrad v. Conrad,* 252 N.C. 412, 113 S.E. 2d 912. 'An assignment of error must present a single question of law for consideration by the court. *Dobias v. White,* 240 N.C. 680, 83 S.E. 2d 785. The purpose of this requirement is to bring into focus the several distinct questions of law which the appellant wishes the appellate court to consider. That purpose is defeated when, as here, appellant jumbles together in the same assignment of error a number of exceptions which undertake to raise quite distinct and different questions of law. . . ." *Duke v. Meisky,* 12 N.C. App. 329, 332, 183 S.E. 2d 292, 294 (1971). While the defendant's failure to properly group his exceptions makes our task more difficult, we have, nevertheless, carefully considered all of the questions raised by the exceptions grouped under his first assignment of error.

[3]   We find no merit in defendant's contention that it was error for the trial court to deny his motion to dismiss for failure on the part of the State to grant him a speedy trial. An examination of the record shows the date of the accident was 26 September 1973; that a warrant was issued and defendant was arrested on 25 October 1973, that defendant was determined to be indigent and counsel appointed to represent him on 30 October 1973; that a preliminary hearing was scheduled for 19 November 1973, and later continued by the State, without opposition from the defendant, until 19 December 1973; that on 19 December 1973 the State took a *nolle prosequi* with leave in the case in District Court because a material State's witness was not available on that date; that on 25 March 1974 defend-

---
State v. Courtney
---

ant filed with the Clerk of Court of Mecklenburg County an application that cause be shown why a writ of mandamus should not issue for this matter to be set for trial and final disposition made; that by letter dated 2 April 1974 the Honorable Fred H. Hasty, Senior Resident Judge of the Twenty-Sixth Judicial District informed the defendant that since the charge of manslaughter against him had been nol prossed with leave in the District Court in December of 1973, and "according to the files and also according to the District Attorney's Office no charge of manslaughter is presently existing against you," a show cause hearing was unnecessary; that on 8 July 1974 the solicitor sent a bill of indictment to the grand jury and the grand jury returned a true bill against the defendant; that defendant's case was set for trial in Superior Court on 11 September 1974; that during pre-arraignment proceedings on 9 September 1974, defendant moved for dismissal of the charges against him for failure of the State to grant him a speedy trial; that the trial judge heard evidence, made findings and concluded that the defendant had not shown that delay in "the prosecution of the manslaughter case has been deliberately and unnecessarily caused for the convenience or supposed advantage of the State and that the length of the delay created a reasonable possibility of prejudice against the defendant and therefore has denied him a speedy trial." The trial judge, therefore, denied defendant's motion to dismiss; and defendant was finally arraigned and brought to trial on 9 September 1974.

On appeal defendant points to the fact that there was a delay of 10 months and 15 days from the date of his arrest on 25 October 1973 until the actual trial of his case on 9 September 1974. He contends that the State deliberately and unnecessarily caused this delay for the convenience of the State and that this delay, in itself, gives rise to a presumption of prejudice to this case. We disagree. In our opinion, defendant was not denied a speedy trial and his motion to dismiss was properly denied.

[2] Our Supreme Court has stated that "the circumstances of each particular case determine whether a speedy trial has been afforded. Four interrelated factors bear upon the question: the length of the delay, the cause of the delay, waiver by the defendant, and prejudice to the defendant." *State v. Johnson*, 275 N.C. 264, 269, 167 S.E. 2d 274, 278 (1969).

[3]   In considering the length of delay in this case, we note that defendant was not tried upon the warrant issued on 25 October 1973. That charge against the defendant was nol prossed with leave in District Court on 19 December 1973, less than two months after the defendant's arrest. As we noted in *State v. Wood,* 17 N.C. App. 352, 355, 194 S.E. 2d 205, 207 (1973), citing *State v. Clayton,* 251 N.C. 261, 268, 111 S.E. 2d 299, 304 (1959), and *S. v. Thornton,* 35 N.C. 256, 257-258 (1852):

> " 'A *nolle prosequi* in criminal proceedings, is nothing but a declaration, on the part of the prosecuting officer, that he will not at that time prosecute the suit further. Its effect is to put the defendant without day—that is, he is discharged and permitted to leave the court, without entering into a recognizance to appear at any other time—(citation omitted); but it does not operate as an acquittal, for he may afterwards be again indicted for the same offense, or fresh process may be issued against him upon the same indictment, and he be tried upon it. (Citations omitted.)'
>
> After a *nolle prosequi* has been taken, the solicitor may replace the cause on the docket only with consent of the court; whereas, a *nolle prosequi* with leave implies consent of the court, and the solicitor may have the case restored for trial without additional order. 2 Strong, N. C. Index 2d, Criminal Law, § 30."

Following the *nolle prosequi* of his case in District Court no charge was pending against the defendant until 8 July 1974, when the grand jury returned a true bill of indictment against him, and his case was set for trial in Superior Court on 11 September 1974. Even when we consider the fact that there was a delay of 10 months and 15 days between defendant's arrest under the warrant and his trial under the indictment, we note that defendant did not oppose a continuance in his case until 19 December 1973. Furthermore, no action was taken by the defendant to raise the question of speedy trial until his motions to dismiss and for summary judgment on 10 June 1974. Defendant was brought to trial 91 days after this demand and 62 days after a true bill of indictment was returned by the grand jury.

Turning to a consideration of the reason for the delay, at the pre-arraignment hearing on defendant's motion to dismiss for the failure of the State to afford him a speedy trial, the State introduced evidence showing that the charge against the

defendant in District Court was nol prossed on 19 December 1973 because a material witness for the State was unavailable at that time. The solicitor also stated that there were approximately 700 cases pending in the Superior Court of Mecklenburg County since January 1974, and that there probably were carry-over cases from 1973 in the amount of 200 to 300 and probably some cases from further back than that. Additionally, according to the solicitor, the file containing the charge against the defendant was misplaced or lost, and he proceeded promptly to the grand jury when the file was located.

Since, in our opinion, the defendant has not waived his right to a speedy trial, we next proceed to a consideration of the question of prejudice resulting from the delay. We note in passing, however, that not until 10 June 1974—some eight months after his arrest—did the defendant raise the question of speedy trial. Moreover, as we already have pointed out, 91 days later defendant was brought to trial.

In his brief, defendant contends he was prejudiced by the State's delay in bringing him to trial. Yet, nowhere in his brief does the defendant explain how he was prejudiced by the delay, nor does the record disclose any prejudice. There is no evidence that the prosecution of his case was deliberately delayed or brought about by any negligent or arbitrary action on the part of the State.

> "The burden is on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution." *State v. Johnson, supra.*

In our opinion defendant has failed to carry his burden of showing prejudice. Considering each of the foregoing factors, we conclude defendant was not deprived of his right to a speedy trial.

As there is plenary evidence to support the verdict, defendant's motions for judgment notwithstanding the verdict and for a new trial on grounds the evidence does not support the verdict, were properly denied. Defendant's first assignment of error is overruled.

Defendant next asserts that it was error for the trial court to permit a Charlotte police officer, while testifying on behalf of the State, to refer to the defendant as the person sitting

under the wheel of the 1966 Ford. It is defendant's contention that this was an in-court identification without proper foundation and highly prejudicial to the defendant. No authority is cited by defendant in support of his argument, and defendant fails to explain how he was prejudiced by this testimony. This assignment of error is overruled.

[4] In his third assignment of error defendant objects to the introduction into evidence of vegetable material and cigarette paper found on his person while he was being examined at the hospital on the grounds that these materials were the product of an unlawful search. Defendant also maintains the trial court erred in refusing to strike testimony concerning the materials. We disagree. As we stated in *State v. Wooten*, 18 N.C. App. 269, 196 S.E. 2d 603 (1973), cert. denied, 283 N.C. 670 (1973), "there was no search of defendant within the purview of G.S. 15-27 and Constitutional provisions forbidding unreasonable searches. Defendant was not undressed by, or at the direction of, a police officer. The purpose in undressing defendant was not to discover contraband or other illicit property or to obtain evidence to be used against her in the prosecution of a criminal action. On the contrary, she was undressed in order that a physician might determine the cause of her unconsciousness and after determining the cause, administer treatment that would save her life. Finding heroin on her person was incidental to the examination." These principles apply in the case at bar. Defendant's third assignment of error, therefore, is overruled.

[5] Defendant next contends it was error for the trial court to permit one of the State's witnesses to the accident to give his opinion as to the speed of the defendant's automobile immediately preceding the collision, without a proper foundation. This assignment of error is without merit. The record discloses that the witness had ample opportunity to observe the defendant's automobile. It is well settled that "[a] lay witness with sufficient knowledge and opportunity to observe may testify as to the speed of a vehicle." 1 Stansbury's N. C. Evidence, Brandis Revision, § 131, p. 418. "[T]he extent of his observation affects only the weight, and not the competency, of the testimony." *Miller v. Kennedy*, 22 N.C. App. 163, 165, 205 S.E. 2d 741 (1974), and cases cited therein, cert. denied 285 N.C. 661 (1974).

[6] In his final assignment of error defendant contends the trial court erred in allowing Dr. Wood to answer the State's

hypothetical question in the form presented. The hypothetical question asked whether the witness had an opinion based upon the assumptions stated, whether the injuries observed when the witness was examining the deceased could have caused the death of deceased. The witness answered "Yes, I do." The record does not show that the witness ever gave his opinion. We fail to see how defendant was prejudiced merely by the asking of an unanswered question, such as this, even if the form of the question was objectionable. The opinion asked for was never given.

No error.

Judges VAUGHN and CLARK concur.