Juan VARGAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 51385.

Court of Criminal Appeals of Texas.

Oct. 20, 1976.

Stephen M. Orr, Austin, for appellant.

Robert O. Smith, Dist. Atty., and Richard E. Banks, Asst. Dist. Atty., Lago Vista, Jim D. Vollers, State's Atty., and David S. Mc-Angus, Asst. State's Atty., Austin, for the State.

George A. Scharmen, II, Huntsville, for appellant.

Ted Butler, Dist. Atty., Keith W. Burris and Susan Spruce, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of possession of heroin; the punishment, which is enhanced by proof of two prior felony convictions, is imprisonment for life.

The appellant asserts the trial court erred in admitting evidence which it is alleged was unlawfully obtained; the appellant also asserts that he was unlawfully arrested.

The record reflects that on September 1, 1974, Officer Frank Garcia responded to a call regarding a "sick party" at a fire station; when he arrived, the appellant was unconscious in an ambulance. Officer Garcia looked for identification and found in appellant's back pocket a card that appeared to be a subpoena from Municipal Court that bore appellant's name; after finding the identification, the officer left; the Emergency Medical Service then trans-

ported appellant to the Bexar County Hospital emergency room.

In the emergency room, appellant was prepared for examination by Marlene Kuechele, a registered nurse; she had been advised that the appellant had been tentatively identified as Juan Vargas. Appellant appeared to be conscious, but he was lethargic, sleepy, and had abscesses in his arm. Kuechele asked the appellant if he had taken an overdose of heroin and he failed to respond; the second time she asked, he admitted that he had overdosed. As required by hospital policy, Kuechele removed appellant's clothes to inventory and store his property; she stated the purpose of the policy was to prepare patients for examination and for protection of the hospital and the patient's property. She felt a heavy bulge in appellant's pocket, reached inside and found a .22 caliber pistol. Pursuant to hospital policy she called for a security officer and told the officers who responded, Tony Valdez and Rita Barriere, that she had found a gun in appellant's trousers and that he had admitted taking an overdose of heroin. After calling the city police, Officer Barriere, a deputy sheriff with the Bexar County Hospital District, looked in appellant's wallet and confirmed that his name was Juan Vargas.

Officer Garcia, the same officer who had earlier seen appellant in the ambulance, responded to the call from the hospital security officers. Upon his arrival at the hospital Officer Garcia was informed that a gun had been found in appellant's pants. He took possession of the gun and had the nurse initial it. Officer Barriere and Officer Garcia then searched the rest of appellant's clothes, finding therein three or five live rounds of ammunition and a yellow balloon containing a substance later identified as the heroin that was admitted in evidence.

There has been no question raised regarding the search for identification conducted in the ambulance upon the unconscious appellant by Officer Garcia. If the heroin-filled balloon had been discovered during the warrantless search of the appellant in the ambulance, the heroin would have been admissible in evidence because a search would have been justified under the "emergency" or "exigent circumstances" doctrine. A search of a person found in an unconscious condition is reasonable and necessary for the purposes of identification and possible discovery of a medical history carried on the person. See *Perez v. State,* 514 S.W.2d 748 (Tex.Cr.App.1974); *Crawford v. State,* 163 Tex.Cr.R. 358, 292 S.W.2d 123 (1956).

While the initial examination of appellant's clothing, which produced the pistol, was conducted by the nurse, the heroin was discovered by the security guards and Officer Garcia. If, upon discovery of the gun, instead of calling the security officer, the nurse had continued her cataloging of appellant's effects, and subsequently found the heroin-filled balloon, the heroin would have been admissible in evidence. A "search" in which the exclusionary rule may apply is one in which there is a quest for, a looking for, or a seeking out of that which offends against the law by law enforcement personnel or their agents. See *Long v. State,* 532 S.W.2d 591 (Tex.Cr.App.1976); *Turner v. State,* 499 S.W.2d 182 (Tex.Cr.App.1973). Appellant was not undressed by, or at the direction of, a police officer. The purpose in the nurse's undressing appellant and cataloging his effects was not to discover contraband or other illicit property or to obtain evidence to be used against him in criminal action. Therefore, had the nurse discovered the heroin in appellant's clothes, her purely private action would not have constituted a "search." See *State v. Wooten,* 18 N.C.App. 269, 196 S.E.2d 603 (1973); *State v. Courtney,* 25 N.C.App. 351, 213 S.E.2d 403 (1975).

The United States Supreme Court has approved the practice of securing and inventorying the contents of automobiles in police custody and control, holding that it is not violative of the Fourth Amendment's prohibition of unreasonable searches and seizures. *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *South Dakota v. Opperman,* —— U.S. ——, 96 S.Ct. 3092, 49 L.Ed.2d 100 (1976). The

United States Supreme Court has stated that these "inventory searches" developed in response to three distinct needs: (1) the protection of the owner's property while it remains in police custody, (2) the protection of the police against claims or disputes over lost or stolen property, and (3) the protection of the police from potential danger. *South Dakota v. Opperman,* supra. We find the reasoning and policies of these cases to be fully applicable to a case such as the one before us.

■ The nurse removed and examined appellant's clothing pursuant to hospital policy which provided that patients awaiting treatment in the emergency room were to be completely disrobed and given a hospital gown to wear. Further, it was the hospital's policy to inventory and place under lock and key all of a patient's personal effects, both to protect the patient's property and to protect the hospital from unwarranted claims stemming from lost or stolen property. The discovery of a pistol in appellant's pants indicated that the appellant was possibly a dangerous individual and brought into focus the need for the safety and protection of the other patients and the employees of the hospital. The nurse called the security guards who, in turn, called the police. After Officer Garcia arrived and had been given the pistol found in appellant's pants, he and the security guards continued the inventory of appellant's personal effects initiated by the nurse.

The appellant contends that the continued inventory of his possessions conducted by security officers Valdez and Barriere and Officer Garcia resulted solely from a suspicion on the part of the officers that the fruits of another crime would be found. Attention is directed to the following exchange:

"[DEFENSE COUNSEL]:
"Q. Then earlier you had stated that you had made a search in order to find the identification at this point?
"[OFFICER BARRIERE]:
"A. Right, at the time we weren't sure—the nurse had told us who he was but to verify his identification, that's when we searched the pants, the back pockets, and we found a wallet with his name.
"Q. The wallet was found earlier, was it not?
"A. Yes, it was.
"Q. It was found on the way to the Security Office. You found identification?
"A. Right.
"Q. So, the search which you conducted in front of Officer Garcia, you had stated that this was for identification?
"A. No, I didn't.
"Q. Now you are saying—
"A. No, I didn't. The search, the first time was for identification. We had a weapon in our possession; when we later searched again, we searched for other weapons.
"Q. All right, so you actually conducted two searches of his trousers?
"A. Technically, yes.
"Q. All right, and at this time, you had not spoken to the defendant, did you say?
"A. No, not until after we had searched his clothing the second time.
"Q. Did you at any time you were searching—would it be correct that you suspected you would find something in his pants?
"A. Yes, I did.
"Q. You had a hunch that something would be there that you would find?
"A. I had a hunch he might have something.
"Q. I see, but, you were looking for at this time—
"A. Possibly another weapon.
"Q. Did you have any reason to believe that he might have a weapon?
"A. We had one weapon, there's a possibility that he could have had another one."

■■ It would not be realistic to require that in justifying an inventory search the police must affirm that they had absolutely

no hopes or expectation of finding contraband or other inculpatory material. An inventory search is reasonable under the requirements of the Fourth Amendment not for the reason that the subjective motives of the police are simplistically pure, but because the facts of the situation indicate that an inventory search is reasonable under the circumstances. See *Boulet v. State,* 109 Ariz. 433, 511 P.2d 168 (1973). What must be kept in mind is that the Fourth Amendment protects the right of the people to be secure against unreasonable searches and seizures. There is no constitutional protection against a reasonable search and seizure. Inventory searches under proper circumstances have been held to be reasonable. In the instant case, the inventory was initiated pursuant to hospital policy for the protection of the hospital and the appellant's property. After the gun was discovered, the inventory was continued by the security guards and a police officer for the protection and safety of the hospital's personnel and other patients. We conclude that the inventory search under the circumstances presented was reasonable. This ground of error is overruled.

Appellant also asserts that he was not lawfully arrested. The record reflects that appellant was not formally arrested until after the heroin-filled balloon was discovered and seized. At the time the heroin was discovered, Officer Garcia had knowledge of facts and circumstances which warranted his belief that the appellant had committed the offense of possession of heroin. Article 14.01, V.A.C.C.P., authorizes a peace officer to arrest an offender without a warrant for any offense committed in his presence or within his view; therefore, Officer Garcia was authorized to arrest the appellant. The heroin which was admitted in evidence, was not seized in a search incident to arrest; since there were no fruits of the arrest, even if the arrest had been unlawful, the heroin admitted would not have been tainted by the alleged unlawful arrest. *Vasquez v. State,* 532 S.W.2d 338 (Tex.Cr.App.1976); *Stiggers v. State,* 506 S.W.2d 609 (Tex.Cr.App.1974); *Gross v. State,* 493 S.W.2d 791 (Tex.Cr.App.1973). This ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.

ROBERTS, Judge (concurring).

I agree that the search was reasonable.

The appellant's clothes were initially in the custody of Nurse Kuechele; she had an affirmative responsibility to conduct an inventory of this clothing for the physical and legal benefit of the appellant, the hospital staff, and the other patients in the hospital. For this reason, and because the clothes were actually in her custody, the rationale of *South Dakota v. Opperman,* —— U.S. ——, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), is applicable. See the dissenting opinion in *Robertson v. State,* 541 S.W.2d 608, 611–615 (Tex.Cr.App.1976).

This lawful inventory produced tangible evidence that the appellant had committed the offense of unlawfully carrying a handgun, in violation of V.T.C.A., Penal Code, Sec. 46.02. Accordingly, Officer Garcia came to the hospital and made a custodial arrest [1] of the appellant. At that time, the officer had the authority to continue the inventory of appellant's clothes, not only for the reasons stated in *South Dakota v. Opperman,* supra, but also because a search of his clothing was justified under the holding of *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

---

1. It is not significant that the officer called this a "constructive" arrest at one point in his testimony. The officer was merely referring to the obvious fact that he would not be taking the appellant to the county jail until the appellant had recovered physically.