State v. Hunt

STATE OF NORTH CAROLINA v. JAMES FRANKLIN HUNT

No. 7918SC395

(Filed 6 November 1979)

1. Criminal Law § 52— hypothetical question—no answer given—no prejudice

A defendant is not prejudiced by the mere asking of an unanswered, hypothetical question, even though the form of the question is objectionable.

2. Criminal Law § 96— jury instructed to disregard evidence—defendant not prejudiced

Defendant in a homicide prosecution was not sufficiently prejudiced to require a new trial where a witness testified that defendant had been drinking and that she knew he lost his temper when he had been drinking, since the court immediately and specifically instructed the jury not to consider that testimony; the evidence to be disregarded was not of a highly prejudicial nature; and at the time of the testimony complained of, three other witnesses had testified to substantially the same thing.

3. Homicide § 21.7— homicide by striking with stick—sufficiency of evidence

Evidence was sufficient for the jury in a homicide prosecution where it tended to show that the victim died as a result of brain damage caused by a blow from a moving blunt instrument on the top of his head slightly behind the midpoint; defendant and the victim argued on the evening of the crime; defendant had threatened to kill the victim; defendant hit the victim above the shoulders with a stick, though witnesses did not know exactly where the blow landed; and deceased died as the result of a blow to the head rather than as a result of subsequently being run over by a car.

APPEAL by defendant from *Crissman, Judge.* Judgment entered 11 September 1978 in Superior Court, GUILFORD County. Heard in the Court of Appeals 29 August 1979.

Defendant was charged in a bill of indictment, proper in form, with the offense of murder of one Ralph Dilldine and was found guilty of the offense of murder in the second degree in

violation of G.S. 14-17. From an active sentence of imprisonment for a term of not less than 15 years nor more than 75 years, defendant appealed.

State's evidence tended to show that on the night of 6 October 1977, defendant, who resided in High Point, had a party at his apartment with several persons present including Ralph Dilldine. Drinks were consumed. An argument developed between defendant and Dilldine. At the conclusion of the argument, defendant and Dilldine shook hands, and Dilldine left. The party continued, and at one point, defendant slapped Betty Allen. Dilldine returned and argued with defendant again. Later, he was seen in an adjacent intersection pretending to be a gorilla, a routine for which he was known in the neighborhood. Dilldine raised up toward defendant as defendant approached with his "stick," which was actually a table leg. Defendant swung his stick and struck Dilldine on the left side of his neck and head. Dilldine went down, and defendant began hitting him about his chest. Defendant then kicked Dilldine around his right ear and told him to get up. Defendant started to leave, and Dilldine began to rise up. A car backed through the intersection over Dilldine; one tire ran over his chest, not his head. Dilldine had been drinking and was intoxicated. Defendant stated to his friends that he had not meant to hit Dilldine so hard and that he wanted to get away. Defendant gave the stick to his cousin, who threw it away. Defendant had recently injured his back and used the stick as an aid when rising from a sitting or reclining position.

Gary Lytch testified that he picked up a friend in his car at 414 Tate Street and decided to back his car (498 feet) down the street to the intersection of Grimes and Tate Streets. There were street lights around the intersection, but it was still dark. Lytch's car was traveling about 15 m.p.h. as he backed it and slowed to five m.p.h. as it entered the intersection. Lytch further testified that he felt a bump, as if he had run over something, and he drove his car forward before he opened his door to look. He then saw a man lying in the road. Lytch's car was inspected later on the night of the events on a lift, and no hair or other human tissue was found.

An autopsy was performed on Dilldine by Dr. Page Hudson in Chapel Hill. Dr. Hudson testified that he observed a variety of

wounds on Dilldine's body including fractured ribs, bruised chest muscles, a small tear on the right ear, scrapes on the left and right shoulders, a skull fracture along the top of the head with blood on the surface of the brain, and swelling of the brain. Dr. Hudson attributed death to the head wound and felt that it had been inflicted by a blunt instrument. Dr. Hudson also felt the wound was more consistent with being struck by a swinging object than with falling and hitting the head. Dr. Hudson did not think that being struck on the left side of the head, struck in the chest, and kicked on the right side of the head would cause the injury that led to death. He felt that a blow to the left side of the head, which knocked Dilldine down but which did not leave a mark, would have had to be delivered by a large, soft object unless Dilldine was intoxicated.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Rebecca R. Bevacqua, for the State.*

*Public Defender Wallace C. Harrelson, Eighteenth Judicial District, by Assistant Public Defender Thomas F. Kastner, for defendant appellant.*

ERWIN, Judge.

The record reveals that the following occurred on redirect examination at the time Dr. Hudson was being questioned by Assistant District Attorney Greeson for the State:

"Q. Well, assuming then, Dr. Hudson, that the jury found as a fact that on October the 6th, 1977, Ralph Dilldine was hit with a stick—approximately twenty-four inches, I believe, is the width as he stated—to the left side of the neck and face area, do you have an opinion satisfactory to yourself as to what type of weapon was used?

A. If I understand your question, it is what sort of weapon could have hit him on the left side of the head?

Q. Yeah. Assume the jury found as a fact that he was struck, let's just say, without the stick—just assuming that he was struck to the left side of his face on October the 6th, 1977, with a force sufficient enough to knock him down, do

you have an opinion as to what type of weapon that would be—and I mean and not leave any marks.

MR. KASTNER: Well, objection, your Honor.

A. Yes, in general terms.

COURT: Go ahead. Overruled.

A. It would have to be something very big and very soft like a sack of feathers."

Defendant assigns error contending the witness, Dr. Hudson, expressed an improper opinion prejudicial to defendant.

On recross-examination pursuant to questions asked by Mr. Kastner, Dr. Hudson testified without objections as follows:

"The only kind of instrument that I know of that could have struck the left side of the head or neck and could have knocked him down and it left no mark would have been a large, fairly soft instrument. I am assuming that the blow was delivered by this instrument to a person who was completely stable and that the force of the blow provided all of the impetus for him falling. I am responding to the question as asked me. My response to the question was of a man who was more or less—not anchored—but steady on his feet and was driven off his feet by the force of some blow. A man who was intoxicated and might have been off balance because that sort of person could have fallen without any blow. None of us took a hair sample from Ralph Dilldine's body in the area of this hematoma that I've talked about at the top of the head. I was not requested to do so by Detective Brown or any other officer to the best of my knowledge. I took no hair sample."

[1] The first hypothetical question propounded by Mr. Greeson was not answered by the witness. A defendant is not prejudiced by the mere asking of an unanswered, hypothetical question, even though the form of the question is objectionable. *State v. Courtney*, 25 N.C. App. 351, 213 S.E. 2d 403, *cert. denied*, 288 N.C. 245, 217 S.E. 2d 668 (1975).

In *State v. Horton*, 275 N.C. 651, 658, 170 S.E. 2d 466, 471 (1969), *cert. denied*, 398 U.S. 959, 26 L.Ed. 2d 545, 90 S.Ct. 2175, *reh. denied*, 400 U.S. 857, 27 L.Ed. 2d 97, 91 S.Ct. 25 (1970), our Supreme Court stated:

"It is well established in this jurisdiction that a party cannot introduce testimony to impeach or discredit the character of his witness, and when in a criminal action a complete defense is established by the State's evidence, a defendant may avail himself of such defense by a motion for judgment as of nonsuit. Yet, if the witness testifies to facts against the State's contentions, the State is not precluded from showing the facts to be other than as testified to by the witness. *State v. Jarrell*, 233 N.C. 741, 65 S.E. 2d 304; *State v. Todd*, 222 N.C. 346, 23 S.E. 2d 47; *State v. Cohoon*, 206 N.C. 388, 174 S.E. 91; *Smith v. R. R.*, 147 N.C. 603, 61 S.E. 575."

In the case *sub judice*, the State was attempting to show the facts to be other than those testified to by the witnesses. In light of the additional testimony at defendant's behest, we find no merit in defendant's claim of prejudice resulting from Dr. Hudson's response to the second hypothetical question.

[2]  During the course of the trial, Betty Allen testified for the State in part as follows:

"A. And we sat around in there and talked some more. And Faye, the lady that was in there with us, she jumped on Mr. Hunt about slapping me and she told him that he shouldn't have done it.

\*    \*    \*

A. Anyway, she told him that he should not have done it and that there was no real reason for him slapping me and losing his temper at me. So Mr. Hunt apologized to me and I accepted it because — well, he was drinking and I know how he loses his temper when he's drinking.

MR. KASTNER: OBJECTION and MOVE TO STRIKE, your Honor. Ask that the jury be instructed.

COURT: Members of the jury, you'll not consider what she knows about how he is when he loses his temper when he's drinking.

Q. Then what happened?

A. Okay —

MR. KASTNER: Like to MOVE FOR A MISTRIAL, your Honor.

COURT: MOTION DENIED and exception."

Defendant contends that the trial court committed error in admission of the testimony and in the failure of the court to declare a mistrial. Defendant contends that the withdrawal and subsequent instructions were not sufficient to cure the prejudicial effect of the elicited testimony. We do not agree.

Whether instructions can cure the prejudicial effect of incompetent statements depends primarily on the nature of the evidence and the particular circumstances of the individual case. *State v. Hunt*, 287 N.C. 360, 215 S.E. 2d 40 (1975); *State v. Aldridge*, 254 N.C. 297, 118 S.E. 2d 766 (1961). In the case *sub judice*, the trial court's instructions were prompt and specific. The evidence to be disregarded was not of a highly prejudicial nature. At the time the evidence complained of was admitted, three other witnesses had testified without objections that defendant had been drinking and that he and Dilldine had gotten into an argument earlier in the evening. George Dobbins testified that defendant had threatened to kill Dilldine. Edward Lee Hunt had testified that defendant came in the house and got his stick before he went out to where Dilldine was in the street. From the evidence, a jury could infer that the defendant had been drinking and had lost his temper before going out into the street. Defendant's reliance on *State v. Aycoth*, 270 N.C. 270, 154 S.E. 2d 59 (1967), is misplaced. *Aycoth, supra,* held that in cross-examination of a codefendant in the prosecution of defendants for armed robbery where the codefendant made an unresponsive answer disclosing that defendant had been indicted for murder, the unresponsive answer was of sufficient prejudicial nature to award defendant a new trial, although the court instructed the jury not to consider such evidence. Here, the reference to defendant's prior loss of temper was not so prejudicial as to warrant a new trial. We find no merit in this assignment of error.

[3] Defendant's third assignment of error reads: "Did the court err in denying the defendant's motions for judgment as of nonsuit at the close of the State's evidence and renewed at the close of all the evidence?"

Upon motion for judgment as of nonsuit, the evidence must be considered in the light most favorable to the State, giving the

State the benefit of every reasonable inference to be drawn therefrom. When there is sufficient evidence, direct or circumstantial, by which the jury could find the defendant had committed the offense charged, then the motion should be denied. *State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535 (1976), *cert. denied*, 429 U.S. 1093, 51 L.Ed. 2d 539, 97 S.Ct. 1106 (1977); *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *see generally* 4 Strong's N.C. Index 3d, Criminal Law, § 106, pp. 547-50.

In applying the above rule, we hold this assignment of error to be without merit. The evidence tends to show Dilldine died as a result of brain damage caused by a blow from a moving blunt instrument on the top of his head slightly behind the midpoint. Four witnesses testified that defendant and Dilldine had been arguing on the evening in question. Dobbins testified that he heard defendant threaten to kill Dilldine. Edward Lee Hunt testified that defendant went in the house and got a stick before going out into the street where Dilldine was. Both Dobbins and Hunt testified that they saw defendant hit Dilldine with the stick and knock him down, then continued to kick him. While it is true that neither Dobbins nor Hunt testified that defendant's blows or kicks were to the top of Dilldine's head, Dobbins stated that the blow with the stick was above Dilldine's shoulder and that he did not actually see where it landed. Barbara Morgan's testimony that she heard defendant say he had not meant to hit Dilldine "that hard" and Hunt's testimony that the defendant's blow with the stick knocked Dilldine down led to a reasonable inference that defendant's blow did considerable damage to Dilldine's head or neck.

That the fatal blow came from defendant's stick rather than the subsequent car accident was established by the State's case. Lytch stated that his car was traveling approximately five m.p.h. when he backed over Dilldine who was lying in the street. Edward Lee Hunt testified that the car ran over Dilldine's chest, not his head. Dr. Hudson testified that the blow to the head was the cause of death, not Dilldine's being run over. The evidence presented by the State was sufficient to overcome defendant's motion for judgment as of nonsuit and was sufficient for the jury to find defendant guilty of murder in the second degree. We find no merit in this assignment of error.

Defendant contends that the trial court erred in "failing to adequately or sufficiently review defendant's evidence or contentions after having undertaken to do so." We do not agree.

The State introduced considerable evidence, while defendant did not offer any evidence. The trial court, at the request of defendant, gave further contentions of the defendant arising from the evidence which were adequate. *See State v. Doss*, 279 N.C. 413, 183 S.E. 2d 671 (1971), *modified*, 408 U.S. 939, 33 L.Ed. 2d 762, 92 S.Ct. 2875 (1972).

Defendant, in his next assignment of error, contends that the trial court did not adequately instruct the jury as requested by him on the issues of foreseeability, proximate cause, and intervening cause. The court instructed the jury:

"[D]o the facts constitute a succession of events so linked together as to make a natural whole or was there some new and independent cause intervening between the wrong and the injury. Was there any intermediate cause disconnected from the primary fault and self-operating which produced the injury.

Proximate cause is that cause which produced the result in continuous sequence and without which it would not have occurred and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed."

These court instructions were in substance as those requested. *State v. Beach*, 283 N.C. 261, 196 S.E. 2d 214 (1973). We hold the above to be sufficient on the issues complained of. There was not any evidence presented to require the court to instruct on the contention of intervening cause. Dr. Hudson testified that Dilldine's death was caused by a blow to his head. All of the testimony was that defendant struck the deceased above his shoulders.

From our study of the complete charge of the trial court, we find that the State was required to prove all the elements of the offense charged beyond a reasonable doubt. The charge was clear and, as a whole, was free from prejudicial error. *See State v. Bailey*, 280 N.C. 264, 185 S.E. 2d 683, *cert. denied*, 409 U.S. 948, 34 L.Ed. 2d 218, 93 S.Ct. 293 (1972).

In the trial of defendant, we find

No error.

Judges CLARK and WELLS concur.