In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00119-CR
_____

**JAMES BOYD AUSTIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th District Court**
**Collin County, Texas**
**Trial Cause No. 296-84448-2018**

**MEMORANDUM OPINION**

In this prosecution of the defendant for possessing between four and two hundred grams of methamphetamine, defendant was convicted of possessing meth police found in the center console of his car after he was stopped by police and his car was impounded and searched.[1] Defendant

---

[1]*See* Tex. Health & Safety Code Ann. § 481.115(d). Austin filed his appeal in the Fifth Court of Appeals, but in April 2020, the Texas Supreme Court signed a docket-equalization order and transferred the

1

moved to suppress the evidence police seized from his car, but the trial court denied the motion. Several months later, the defendant pleaded guilty pursuant to a plea agreement, and the defendant appealed. In a single issue, James Boyd Austin contends the search of his car violated his constitutional and statutory rights against an unreasonable search and seizure because the purported inventory search police performed on his car was conducted in bad faith.[2] Concluding Austin's argument lacks merit, we will affirm.

## Background

In 2018, a grand jury indicted Austin for possessing between four and two hundred grams of meth.[3] Austin's indictment was based on meth that an officer employed by the City of Allen Police Department found in Austin's car after another officer stopped Austin for violating two Texas traffic laws.[4] After Austin was stopped, the officer who conducted the stop arrested Austin for driving with an expired registration. And following Austin's arrest, the police impounded his car as required by the Allen

appeal to the Ninth Court of Appeals to equalize the appellate dockets. *See* Tex. Gov't Code Ann. § 73.001.

[2]*See* U.S. CONST. amend. IV; Tex. Const. art. I, § 9.

[3]*See* Tex. Health & Safety Code Ann. § 481.115(d).

[4]*See* Tex. Transp. Code Ann. §§ 502.040(a), 502.407(a), 601.051.

2

Police Department's "Vehicle Impounds" General Order ("the Impounds Order"). Officer Hein, who had arrived on the scene with another officer to back up the officer who placed Austin under arrest, performed the inventory search on Austin's car. When Officer Hein opened the car's center console and emptied its contents, he discovered a baggie of meth inside.[5]

After Austin was indicted, Austin filed a boilerplate motion to suppress, claiming police detained and arrested him without reasonable suspicion or probable cause and seized evidence without having a valid warrant authorizing police to search or seize evidence, which violated his statutory and constitutional rights. Six weeks after Austin filed the motion to suppress, Austin filed a brief to support his motion, claiming the officers who performed the inventory search of his car failed to conduct the search in good faith under the written policies, adopted by the City of Allen, applicable to vehicles impounded by police. In his brief, Austin claimed the officers who performed the inventory search of his car

---

[5]The officer who stopped Austin and arrested him did not testify in the hearing on Austin's motion.

carried the purported inventory search out as a subterfuge so they could investigate whether criminal activity had occurred.

When the trial court held a hearing on Austin's motion, just one witness testified, the officer who performed the inventory search on Austin's car. During the hearing, the officer introduced himself as "Officer Hein with [the] Allen Police Department."[6] When questioned by the prosecutor, Officer Hein testified he was in training and accompanied by another officer, Officer Ramirez, who was his training officer the day they arrived on scene to "back up Officer Pope[.]" According to Hein, Officer Pope stopped Austin and took Austin into custody while Hein and Officer Ramirez stayed and performed the inventory search on Austin's car. Officer Hein explained he saw Austin at the scene, but he denied ever speaking to Austin that day. Officer Hein testified that when he performed the inventory search on Austin's car. he "[l]ocated narcotics within the vehicle." Officer Hein generally described what he does when performing an inventory search. He stated: "Basically, we look anywhere that valuables could be contained."

---

[6]Nothing in the reporter's record or clerk's record identifies Officer Hein by his first name, so we refer to him the opinion as Officer Hein.

4

A copy of the City of Allen Police Department's Impounds Order, call it the Impounds Order, contains the policies applicable to vehicles police employed by the City of Allen impound and inventory. The Impounds Order was admitted into evidence during the hearing.[7] We note the Impounds Order requires officers to "inventory closed containers that may be opened, without damage to the container." And it requires "[a]ll vehicles being impounded [to] be inventoried for the protection of the owner's personal property as well as the Department."

Turning to the details of Officer Hein's inventory of Austin's car, the prosecutor asked Officer Hein whether the City of Allen has "an inventory policy in place." Officer Hein confirmed the City did have an inventory policy in place. Then, the prosecutor asked:

> (Attorney) Q. Did you follow it according to what you needed and what you should have done?
> (Officer) A. I did. It was.
> (Attorney) Q. Did you believe that this was a narcotic investigation?
> (Officer) A. Not until narcotics were uncovered.
> (Attorney) Q. Were you surprised when you did find narcotics?
> (Officer) A. Yes ma'am.
> (Attorney) Q. Did you believe this to be an investigatory search when you started your inventory?
> (Officer) A. No ma'am.

---

[7]The Impounds Order was admitted without objection.

Even though Austin's attorney's cross-examined Officer Hein, we find nothing in Officer Hein's testimony showing that he failed to follow the written policy as that policy is described in the Impounds Order regarding the manner of the inventory search occurred. The evidence the trial court considered during the hearing on Austin's motion includes a videorecording from a body camera worn by Officer Hein on the scene. Nothing in the videorecording contradicts the officer's testimony.

Further, we note that during the hearing the prosecutor told the trial court that the parties had agreed Austin did not dispute the validity of the stop or his arrest. When the prosecutor made that statement, Austin's attorney responded: "Yeah[.]" Further, in the hearing Austin's attorney never argued or claimed that Austin's stop or that Austin's arrest incident to the stop violated the law.

When the hearing ended, the trial court denied Austin's motion. The trial court made these three findings orally on the record in the hearing:

- "[T]he Allen Police Department did have a valid policy concerning inventory searches[;]"
- "Officer Hein's search was pursuant to that valid policy[;]" and
- The inventory of Austin's car "was not an illegal search[.]"

This appeal followed.

## Standard of Review

To suppress evidence for an alleged Fourth Amendment violation, the defendant bears the initial burden of rebutting the presumption the police acted properly.[8] A defendant satisfies his initial burden if he establishes that the search or seizure occurred without a warrant.[9] Once the defendant shows he was searched or his property was seized without a warrant, the burden shifts to the State to establish that the search and the seizure were reasonable.[10] In evaluating a trial court's suppression ruling, we must keep in mind that the "touchstone of the Fourth Amendment is reasonableness, not individualized suspicion."[11] In evaluating whether a given search was reasonable, we evaluate it in relation to the search's "scope and manner of execution."[12]

---

[8] *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009).
[9] *Amador*, 221 S.W.3d at 672.
[10] *Id*. at 672-73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).
[11] *Samson v. California*, 547 U.S. 843, 855 n.4 (2006).
[12] *Maryland v. King*, 569 U.S. 435, 448 (2013).

We use a bifurcated standard to review a trial court's ruling on a motion to suppress.[13] Under that standard:

> The trial court is given almost complete deference in its determination of historical facts, especially if those are based on an assessment of credibility and demeanor. The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. However, for mixed questions of law and fact that do not fall within that category, a reviewing court may conduct a *de novo* review.[14]

As the sole judge of the credibility and weight to give the evidence admitted in the hearing on Austin's motion to suppress, the trial court had the discretion to accept or to reject Officer Hein's testimony about the purpose and reasons he searched Austin's car.[15] "That same deferential standard of review applies to a trial court's determination of historical facts [even] when that determination is based on a videotape recording admitted into evidence at a suppression hearing."[16]

---

[13]*Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018).

[14]*State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019) (cleaned up).

[15]*See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (noting that the trial judge acts as the trier of fact in a suppression hearing).

[16]*State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013) (cleaned up).

Analysis

The Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution protects against unreasonable searches and seizures.[17] While subject to several exceptions, the well-established rule is that "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment.'"[18] An inventory search of a vehicle that has been lawfully impounded by police is but one of the recognized exceptions to the general rule requiring police to obtain a warrant before searching or seizing property.[19]

The rationale for the exception is tied to the shared interest that exists between the government and the property's owner since the police, after impounding a car, are potentially responsible for its contents.[20] Consequently, when authorized  through a written policy identifying

---

[17]U.S. CONST. amend. IV; Tex. Const. art. I, § 9; *Johnson v. State*, 912 S.W.2d 227, 232 (Tex. Crim. App. 1995) (explaining article I, section 9 offers no protections substantively different from those afforded by the Fourth Amendment).

[18]*United States v. Ross*, 456 U.S. 798, 825 (1982) (citations omitted).

[19]*Colorado v. Bertine*, 479 U.S. 367 (1987); *South Dakota v. Opperman*, 428 U.S. 364 (1976).

[20]*See Bertine*, 479 U.S. at  372; *Opperman*, 428 U.S. at 370.

what an officer may inventory after impounding a car, the search that results serves "to protect the owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from [the] danger [the contents in the car may pose to the police or to others.]"[21] Still the department's policy "should be designed to produce an inventory[,]" and under the policy "the individual police officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime."[22]

That said, courts need not apply an all or nothing requirement to a department's written policy authorizing an inventory search to find that a given inventory search an officer carried out pursuant to departmental policy was reasonable.[23] So, police need not "affirm that they had absolutely no hopes or expectation of finding contraband or other inculpatory material" to justify inventorying a vehicle when the vehicle has been lawfully impounded.[24]

---

[21]*Bertine*, 479 U.S. at 380.
[22]*Florida v. Wells*, 495 U.S. 1, 4 (1990) (cleaned up).
[23]*Id*.
[24]*Vargas v. State*, 542 S.W.2d 151, 154 (Tex. Crim. App. 1976); *see also United States v. Prescott*, 599 F.2d 103, 106 (5th Cir. 1979)

Austin argues the trial court erred in denying his motion to suppress because the State failed to carry its burden of proof to show the officers who inventoried his car conducted the search in good faith according to the written policies of the Allen Police Department. Those policies, according to Allen, required Officers Hein and Ramirez to itemize "all property belonging to a person who is arrested by the department." Austin notes the list of items that Officer Hein wrote on the inventory performed on his car lists just four items in his car—three DeWalt® tools and one additional general category, which is listed as "misc. tools." But Austin claims the itemized list in the inventory form on his car, admitted into evidence as State's Exhibit 3, doesn't include twenty-two items clearly visible in the videorecording taken from Officer Hein's body camera. The videorecording from the body camera was admitted in the hearing as State's Exhibit 1.[25] According to Austin,

---

(explaining that under the Fourth Amendment when "an inventory search is otherwise reasonable, its validity is not vitiated by a police officer's suspicion that contraband or other evidence may be found").

[25]To be fair, Austin argues these twenty-two items, which he listed, were only "illustrative of the problem[,]" and he says the twenty-two specific items he listed in his brief are not a comprehensive list of the items Officer Hein omitted from the inventory in the Vehicle Impound form he filled out conducting his search.

because the evidence shows he was arrested on a minor traffic infraction and Officer Hein failed to follow the Department's written Impounds Order when searching his car, the trial court should have inferred Officer Hein's purpose in searching his car was to investigate whether a crime had occurred and rejected the State's claim that Hein was conducting the search pursuant to the requirements of the Police Department's Impounds Order.

To support his claim the trial court's ruling should be reversed, Austin relies heavily on *Cox v. State*, No. 05-14-00553-CR, 2015 Tex. App. LEXIS 3217 (Tex. App.—Dallas Apr. 1, 2015, no pet.) (not designated for publication). In *Cox*, an officer conducted an inventory search of a truck after the officer arrested the truck's driver for a minor traffic violation and impounded the truck.[26] The arresting officer performed what he described as an inventory search of the truck and found meth. The officer who arrested Cox and performed the search testified that under the Department's policy for impounding vehicles, he was required to document everything of value left in a vehicle on the impound inventory

---

[26] *Cox v. State*, 2015 Tex. App. LEXIS 3217, at *2 (Tex. App.—Dallas Apr. 1, 2015, no pet.).

form.[27] Yet the inventory form the officer filled out listed only two general categories of property without a description, and a videorecording from the officer's body camera showed the truck contained many items that were not documented on the form the officer filled out.[28] Importantly, unlike Austin's case, a copy of the written policy of the City of Collinsville's Police Department was not admitted into evidence, so the appellate court had only the testimony of the officer employed by the City who arrested Cox to rely on when evaluating what the police department's policy required.[29]

Here, the evidence before the trial court includes the written policy of the Allen Police Department. It describes the standardized procedures Officer Hein follows in performing inventory searches. The Department's Impounds Order doesn't require the City's officer to document everything of value on the inventory form, as Austin claims. The Vehicle Impounds form, which Hein filled out, does not require that everything in the car be document either. Simply put, with the exception of animals and

---

[27]*Id.* at *5.
[28]*Id.* at *2-3 ("Under the section of the form for the description of any personal property left in the vehicle, Officer Aguirre wrote only that the vehicle contained miscellaneous tools and miscellaneous clothing.").
[29]*Id.* at *5.

property that an officer removes from a vehicle, the Department's written policy appears to leave it to an officer's discretion what items to put on the form. Second, *Cox* does not control the outcome in Austin's appeal because it is an unpublished opinion.[30] Under the Rules of Appellate Procedure, unpublished opinions have "no precedential value[.]"[31]

Here, the parties do not dispute that Austin was lawfully stopped, his car lawfully impounded, or that the City of Allen Police Department has a written policy stating what the Department's officers are supposed to do when inventorying the contents of car impounded by police. So the appeal hinges on two things: (1) Does the Impounds Order require Officer Hein to itemize "all property belonging to a person who is arrested by the department[;]" and (2) Are we required to defer to the trial court's implicit finding that Officer Hein performed the inventory in good faith even if he didn't complete exhaust all procedures required by the Impounds Order?

To begin, we note that the Department's Impounds Order does not state that the officer performing the inventory must itemize "all property belonging to a person who is arrested by the [D]epartment," as Austin

---

[30] *See Cox*, 2015 Tex. App. LEXIS 3217.
[31] Tex. R. App. P. 47.4(a).

claims. Instead, Austin misquotes the sentence in the Department Impounds Order to make it fit the argument he makes on appeal. His claim that the Impounds Order required Officer Hein to itemize all the property in Austin's car because Austin was arrested rests section II of the Vehicle Impounds Order under section labeled "Policy." That section states:

> The Allen Police Department has an obligation to *safeguard* all property belonging to a person who is arrested by this Department, is involved in a motor vehicle accident or any other situation which renders them incapable of protecting or otherwise disposing of the property themselves. This General Order provides the guidelines necessary for the removal or towing of vehicles that are not drivable due to accident, illegally stopped, standing or parked, stolen or abandoned or in this Department's custody for any reason. Procedures for the removal, inventory and storage of property are also addressed. (emphasis added by the Court).

Thus, Austin changed the word *safeguard* to *itemize* because the word safeguard doesn't help his argument. Safeguard does not imply a requirement that every item in a vehicle be itemized to protect it from harm. For example, safeguarding all property belonging to Austin necessarily included his car. So as the term *safeguard* is used in the Impounds Order, the term carries its common meaning, to guarantee and

15

protect the property's safety.[32] Moreover, the section set out the policy, and is not the section that specifically instructs officers about what they are to do in performing an inventory on a vehicle. Those instructions are found in another part of the Impounds Order.

We turn then to the part of the Impounds Order that does describe what an officer must do on impounding a vehicle. Section III of the Impounds Order identifies the "Duties and Responsibilities" of the Department's officers. That section requires the Department's officers to do these four things:

> 1. Accurately and legibly complete an Impound Report (APD-189) on every vehicle impounded.
> 2. When items are removed from an impounded vehicle, ensure they are properly maintained, tagged, and placed in property/evidence storage.
> 3. Ensure non-motor vehicle items are documented on proper forms.
> 4. Do not leave the scene until the wrecker has secured the vehicle and is ready to leave unless the officer directs a Citizen on Patrol (COP) or a Public Safety Officer (PSO) to remain at the location.

In Addition to Section III, section VI B of the Impounds Order describes that if an item is removed from a vehicle for safekeeping, such as money

---

[32] *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1998 (2002).

or jewelry, the item must be listed in the space labeled "Items Removed from Vehicle Prior to Inventory" on the Vehicle Impound Report (APD-189). That page is not part of Exhibit 3, and no one asked if Officer Hein removed any items from Austin's car.

Lastly, Section VI C describes what officers must put on the inventory in the "Items Removed from Vehicle Prior to Inventory" should an officer find an animal in a vehicle. When the Impounds Order is viewed as a whole, the Department's Impounds Order demonstrates its procedures are designed to allow an officer to produce an inventory of what an officer views as the significant items found in a vehicle along with any items removed from a vehicle. From examining the written Impounds Order, the trial court could have reasonably concluded it was not designed to allow an officer to search a vehicle for incriminating evidence without probable cause and that instead it was designed to produce an inventory of the items the officer, in the officer's discretion, viewed as having a significant value sufficient to note the item on the inventory form.

The trial court could also reasonably conclude from the evidence that Officer Hein complied with the Department's procedures in filling

17

out the Impound Report (APD-189). The Impound Report was admitted into evidence in the hearing. According to Officer Hein, he complied with the Department's policies when he filled out the report, and as previously noted, nothing in the Department's written policies required Officer Hein to list every item he found and left in the vehicle on the form. When Officer Hein was examined and asked what he did, Officer Hein testified he just went through the car "to make sure there is nothing of value in there. If there is, then we annotate it." When asked what he listed in the Impound Report, Hein testified he listed "some high value power tools, et cetera, and tools." Importantly, no one asked Officer Hein whether, in hindsight and after having viewed the items in the videorecording, he left items of value off the Impound Report that, in hindsight, he believed he should have included on the form. And there is no testimony placing any value on any of the items in Austin's car.

Austin complains that the fact Officer Hein was opening things inside his car, like the car's center console, shows he was looking for evidence of a crime. But the Impounds Order authorizes City of Allen police officers to open closed containers when inventorying cars. The Impounds Order, Section IV A 3, states: "The inventory shall include the

18

inventory of closed containers that may be opened, without damage to the container." During the hearing, Austin did not prove (and he does not argue) on appeal that Officer Hein damaged anything in his car, including the center console. Thus, the trial court could reasonably reject Austin's claim that Officer Hein opened the center console of the car and other closed containers because he was looking for evidence of a crime. Instead, the trial court was entitled to accept Officer Hein's testimony that he was following the Department's Impounds Order in carrying out his search. It follows that the trial court could reasonably conclude the officer based his decision to open the console on a standardized criteria applicable to conducting the inventory search at issue, not simply the officer's suspicion of a crime.[33]

We conclude the trial court's findings—that the Allen Police Department has a valid policy to inventory vehicles police have impounded, and that Officer Hein carried out his search in accord with that policy—are rationale findings from the evidence admitted in the hearing on Austin's motion. Austin failed to produce any evidence in the hearing to prove that Officer Hein, who was following the Impounds

---

[33]*See Bertine*, 479 U.S. at 375.

Order and filled out the information required by the Impound Report (APD-189), acted in bad faith or for the sole purpose of investigating crime.[34]

## Conclusion

Because we conclude Austin's arguments supporting his issue that the trial court erred in denying his motion to suppress lack merit, the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 4, 2022
Opinion Delivered September 28, 2022
Do Not Publish

Before Golemon, C.J., Kreger and Horton, JJ.

---

[34]*See id.* at 372.