Cheryl R. WILSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–01–01035–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 13, 2003.

768 

Lucinda Kay Marshall, Houston, for appellants.

E. Hamilton Baugh, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and FROST.

## OPINION

LESLIE BROCK YATES, Justice.

Appellant, Cheryl Wilson, was convicted by a jury of possessing 200 to 400 grams of cocaine with intent to deliver. The court sentenced her to a term of 35 years' imprisonment. In one point of error, appellant claims the trial court erred in denying her motion to suppress illegally seized evidence. We affirm.

### Background and Procedural History

On May 4, 2000, appellant was involved in a single-car accident. Emergency crews responded to transport appellant to Ben Taub Hospital. She requested that her belongings, a purse and backpack, be retrieved from her car and sent with her to the hospital. The officer on the scene, Jeffrey Roeder, asked appellant if he could retrieve her identification from the purse and she consented. He removed a Texas identification card and a Texas inmate card, but looked no further into the purse. At appellant's request, Roeder returned both bags to her and she was then transported by ambulance to the emergency room.

Emergency-room nurse Jeanne Coberstein noticed appellant's purse contained a large amount of cash and requested the nurse manager, Karen Tootoo, and the hospital's clothing clerk, Stacey Fairish, to secure the property. Tootoo testified that hospital policy requires items valued at over one hundred dollars be sent to the security office for inventory by a security guard and clothing clerk. Items of lesser value are put into a safe. If alert and oriented, a patient is asked if she wishes to keep her valuables with her and, if so, is informed that she is responsible for the items. Alternatively, if a family member is immediately available and the patient so wishes, the valuables may be given to the family member.

After arriving to inventory the property, Tootoo told appellant that she intended to lock up her property. Appellant repeatedly requested that the property be given to

her husband when he arrived. However, no family members were currently present and available to take possession of the bags. Tootoo decided that because of the large amount of cash involved she should lock it up anyway. Tootoo, accompanied by a security officer and clothing clerk, took the property to her office to count the money. When Tootoo and Fairish pulled the money out to conduct the inventory, Fairish saw drug paraphernalia. Tootoo then stopped the proceedings and called in a hospital contract officer who is an off-duty police officer. The search revealed a variety of drugs, a gun, scales, and over $5,000 in cash.

Officer Roeder arrived at the hospital between 30 minutes and an hour and a half after the appellant arrived and was taken to the office where appellant's belongings were being searched. He secured the office and called in the Narcotics Division of the Houston Police Department. Appellant was arrested and charged with possession with intent to deliver a controlled substance. Appellant filed a pretrial motion to suppress alleging the evidence was seized as the result of an illegal detention, without probable cause.

## Standard of Review

Motions to suppress are subject to a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim.App.2000). As a general rule, an appellate court should give almost total deference to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). An appellate court should also give the same amount of deference to the trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evalu-

ation of credibility and demeanor. *See id.* An appellate court may review *de novo* "mixed questions of law and fact" not falling within this category. *See id.* If the trial court does not file findings of fact and conclusions of law, an appellate court presumes the trial court made findings necessary to support its ruling so long as those implied findings are supported by the record. *See State v. Simmang*, 945 S.W.2d 219, 221–22 (Tex.App.-San Antonio 1997, no pet.).

## Analysis

The question presented here is an issue of first impression for this court. We must first determine whether a patient retains any expectation of privacy in belongings lawfully taken and inventoried by hospital employees incident to emergency care. Second, if we conclude that such a privacy interest exists, we must determine whether it is subordinate to a legitimate governmental interest.

■ In a motion to suppress evidence, the burden of proof is initially with the defendant to show that the seizure occurred without a warrant. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App. 1986); *Telshow v. State*, 964 S.W.2d 303, 307 (Tex.App.-Houston [14th Dist.] 1998, no pet.). The State expressly disclaimed reliance upon a warrant at the motion-to-suppress hearing. In the absence of a warrant, the State must prove the reasonableness of the seizure. *Id.* A search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions. *Reasor v. State*, 12 S.W.3d 813 (Tex.Crim.App.2000).

### Government Agents

■ The Fourth Amendment to the United States Constitution applies only to searches and seizures conducted by gov-

ernment officials and persons who act as agents or instruments of government. *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). Ben Taub Hospital is a governmental facility run by the Harris County Hospital District and its emergency-room employees conducted the search. Although not dispositive as to the issue of the search's reasonableness, *Ferguson v. City of Charleston* unequivocally states that as "a state hospital, the members of its staff are government actors, subject to the strictures of the Fourth Amendment." 532 U.S. 67, 76, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001).

■ As government actors, the central issue is whether the warrantless search of appellant's bags was reasonable under the Fourth Amendment. We find that it was. The relevant test is whether under all the circumstances the search was reasonable. *South Dakota v. Opperman,* 428 U.S. 364, 373, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The validity of a particular search is judged by balancing the individual's expectation of privacy and the government's legitimate interests. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

### Privacy

■ Appellant claims a privacy interest in her purse and backpack. To establish this interest appellant must show: (1) she had an actual, subjective expectation of privacy in the invaded possession; and (2) her expectation of privacy was one that society accepts as reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). A general expectation of privacy in a purse or backpack is reasonable because such baggage is intended as a repository of personal effects. *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Furthermore, appellant demonstrated her subjective privacy interest by repeatedly requesting the bags be given to

her husband. However, the analysis does not end there.

■ The issue is whether under the circumstances appellant's reasonable expectation of privacy is diminished. We find that it is. Emergency medical care, by its very nature, results in diminished privacy of the patient. Clothing, jewelry, billfolds, and bags are routinely removed for a myriad of purposes. *See Vargas v. State,* 542 S.W.2d 151 (Tex.Crim.App.1976) (finding inventory of patient's clothing admissible); *Crawford v. State,* 163 Tex.Crim. 358, 292 S.W.2d 123 (1956) (finding stolen billfolds removed from patient were admissible). It is unreasonable to tie the hands of hospital staff who need to examine the personal effects of a patient in an emergency setting in order to determine if he or she possesses any information that might throw light on the care and treatment needed. *Crawford,* 292 S.W.2d at 124.

Because of the diminished expectation of privacy that exists under emergency-medical-care circumstances, appellant's interest in the purse may be subordinate to legitimate governmental interests. *Stewart v. State,* 611 S.W.2d 434, 438 (Tex.Crim.App. 1981) (holding warrantless search of defendant's purse during booking was constitutionally permissible). Therefore, it is necessary to balance these interests to determine the validity of a particular search.

### Government Interest

■ The State contends the search of appellant's purse is a valid exception to the warrant requirement as a standard inventory search under *Opperman.* The United States Supreme Court has approved the practice of securing and inventorying the contents of automobiles in police custody and control, holding that it is not violative of the Fourth Amendment's prohibition of unreasonable searches and seizures. *Opperman,* 428 U.S. at 373, 96 S.Ct. 3092. Under *Opperman,* inventory searches are

constitutional when carried out in accordance with standard procedures and to the limited extent necessary for the care-taking function. *Id.* at 375, 96 S.Ct. 3092. The Court outlined three distinct needs that underlie inventory searches making them a necessary exception to the warrant requirement. These are to protect (1) the owner's property, (2) police against claims, and (3) against potential danger. *Id.* at 369, 96 S.Ct. 3092.

The Court of Criminal Appeals has found the reasoning and policies of these cases to be fully applicable to hospital inventory searches. *Vargas,* 542 S.W.2d at 154. Hospital staff testified that the purpose of the hospital inventory procedure was to achieve these same objectives: (1) protect the owner's property while she remains hospitalized; (2) protect the hospital against claims or disputes over lost or stolen property; and (3) protect doctors and patients from potential dangers.

As in *Vargas,* the purpose of the inventory search was not to discover contraband or to obtain evidence to be used against appellant in a criminal action, but rather to secure and protect her belongings. 542 S.W.2d at 153. These are valid and well-established justifications for an inventory search. "An inventory search is reasonable under the requirements of the Fourth Amendment not for the reason that the subjective motives of the hospital staff are simplistically pure, but because the facts of the situation indicate that an inventory search is reasonable under the circumstances." *Id.* at 155.

The nurse removed and examined appellant's bags pursuant to hospital policy. The purpose in the search was not investigatory, but for the legitimate reasons put forth by the State. The State established that these are valid concerns for Ben Taub Hospital. There has been a history of claims against the hospital for missing items. Therefore, hospital policy dictates that any property in excess of $100 be inventoried and sent to security. The staff testified that it would be exceedingly difficult to protect property merely left on the patient's hospital bed, as the nurses' attention is focused on patient care and unauthorized people are often found in the hospital. Furthermore, the emergency staff discovered drugs and a weapon within appellant's belongings that could cause a direct threat to patients, hospital staff, and others in the hospital.

## Conclusion

Although we recognize appellant's reasonable expectation of privacy in her belongings, when balanced with the hospital's legitimate needs we find no Fourth Amendment violation. Individuals entering an emergency-care situation must recognize that their privacy interests are diminished. Clothing, jewelry, and other personal items are often removed for medical, safety, and efficiency reasons. Hospital policy provided for the property to be turned over to a third party if the patient so requests and the individual is readily available. The record indicates that appellant had no family members present at the time she requested her property to be turned over to them rather than being inventoried. In the absence of this alternative, inventory searches such as the one hospital workers conducted here are reasonably necessary to protect the interests of both the patient and the hospital. We therefore affirm.