Affirmed and Opinion filed August 16, 2005









Affirmed and Opinion filed August
16, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-03-01076-CR

_______________

 

JONATHAN KIRK DUHIG, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

__________________________________________________________

 

On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 942,652

__________________________________________________________

 

O P I N I O N

After the trial court denied his pre-trial motion to
suppress, appellant, Jonathan Kirk Duhig, pleaded guilty to possession with
intent to deliver methamphetamine.  The
trial court sentenced appellant to nine years and eleven months= confinement.  In four issues, appellant contends the trial
court erred by denying his motion to suppress. 
We affirm.








I. 
Background 

At the motion to suppress hearing, the trial court heard
testimony from Ron Morrison, a narcotics deputy with the Harris County Sheriff=s Department.  Deputy Morrison testified that on March 18,
2003, during a traffic stop, a passenger in the vehicle informed him that there
were possibly narcotics at 12011 Lennington Street in Houston.  At approximately 3:00 a.m., the passenger
showed Deputy Morrison the house.  After
the rest of Deputy Morrison=s Ahot spot@ team arrived, he and five other deputies decided to do a Aknock and talk,@ which is an attempt to contact the
owner of the house.  Deputy Morrison
knocked on the front door approximately ten times but received no answer
although he heard movement and noticed a television was on in a bedroom.  The top portion of the front door had a
crescent-shaped window.  Using a flash
light, Deputy Morrison, who is six feet, three inches tall looked through the
window while standing on his tiptoes.[1]  He saw a jar of what appeared to be
marijuana, a digital scale, and a pipe or Abong@ on a coffee table in the living
room.

The deputies then decided to go to the back of the house to
see if anyone was in the house.  It is
disputed whether they had unrestricted access to the backyard.  Deputy Morrison testified they did not have
to cross or pass through any fences in order to reach the backyard. In
contrast, appellant presented evidence that a gated fence blocked access to the
side yard, and another gated fence blocked access from the side yard to the
backyard.  In any event, the deputies
approached the back of the house.  A
glass patio door was open approximately six inches.  Deputy Morrison peered through the glass door
using his flashlight and had a clearer view of the coffee table in the living
room.  He also smelled marijuana coming
from an air conditioning unit and observed a marijuana‑growing lab
through a broken window partially covered with cardboard.








According to Deputy Morrison, the open patio door gave the
deputies concern that a drug-related home invasion might be occurring.  They decided to enter the house out of
concern for the residents.  They found a
woman hiding in one room and appellant hiding in another room.  While searching for other possible perpetrators,
they saw the marijuana-growing lab they had earlier observed from the backyard.  The deputies placed appellant and the woman
in a patrol car.

The other deputies remained at the house while Deputy
Morrison obtained a search warrant.  A
magistrate issued the search warrant based upon Deputy Morrison=s affidavit outlining his observation
through the front door window and his observations while outside the back
door.  The deputies found the
methamphetamine forming the basis of appellant=s conviction after Deputy Morrison
obtained the search warrant.  Appellant
filed a motion to suppress contending the search warrant was invalid.  The trial court denied the motion to suppress
and allowed appellant to appeal its ruling.

II.  Motion
to Suppress

In reviewing a trial court=s ruling on a motion to suppress, we
apply a bifurcated standard, giving almost total deference to the trial court=s determination of historical facts
supported by the record, and reviewing de novo the trial court=s application of the law of search
and seizure.  Carmouche v. State,
10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d
85, 88B89 (Tex. Crim. App. 1997); Marsh
v. State, 140 S.W.3d 901, 905 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d). 
In a motion to suppress hearing, the trial court is the sole trier of
fact and the sole judge of the credibility of the witnesses and the weight to
be given their testimony.  State v.
Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Marsh, 140 S.W.3d
at 905.  The trial court is free to
believe or disbelieve all or any part of a witness=s testimony, even if the testimony is
uncontroverted.  Ross, 32 S.W.3d
at 855; Marsh, 140 S.W.3d at 905.








Appellant contends the trial court erred by denying his
motion to suppress because the search warrant used to seize the methamphetamine
was invalid.  In his first three issues,
appellant asserts that Deputy Morrison=s affidavit, upon which the search
warrant was based, contained information obtained in violation of the Fourth
Amendment and misrepresentations because (1) Deputy Morrison conducted an
impermissible, warrantless search by looking through the front door window, (2)
the deputies trespassed or conducted an impermissible, warrantless search by
entering appellant=s backyard and approaching the back door, and (3) the
deputies entered his house without a warrant. 
In his fourth issue, appellant contends in general that the search
warrant was invalid for the reasons set forth in his first three issues.[2]

A.        Observation
through the Front Door Window 








First, appellant contends that Deputy Morrison conducted an
impermissible, warrantless search when he looked through the window on
appellant=s front door and observed marijuana
and drug paraphernalia on the coffee table.[3]  The Fourth Amendment protects against
unreasonable searches and seizures.  U.S. Const. amend. IV.  A search conducted without a warrant issued
upon probable cause is per se unreasonable subject only to a few
specifically established and well‑delineated exceptions.  See Reasor v. State, 12 S.W.3d
813, 817 (Tex. Crim. App. 2000); Wilson v. State, 99 S.W.3d 767, 769
(Tex. App.CHouston [14th Dist.] 2003, pet. ref=d). 
For Fourth Amendment purposes, a Asearch@ does not occur, even when the
explicitly protected area of a house is concerned, unless the individual
manifested a subjective expectation of privacy in the object of the challenged
search, and society is willing to recognize that expectation as reasonable.  Porter v. State, 93 S.W.3d 342, 346 (Tex.
App.CHouston [14th Dist.] 2002, pet. ref=d) (citing Kyllo v. United States,
533 U.S. 27, 33 (2001)).

Appellant argues that the officers violated his subjective
expectation of privacy by approaching his front door and looking through the
window.  We disagree.  Absent express orders from a person in possession
of property not to trespass, anyone, including a law enforcement officer or
common citizen, has the right to approach the front door of a residence and
knock on the door.  Cornealius v.
State, 900 S.W.2d 731, 733B34 (Tex. Crim. App. 1995); Bower v. State, 769 S.W.2d
887, 897 (Tex. Crim. App. 1989), overruled on other grounds by Heitman v.
State, 815 S.W.2d 681, 685 (Tex. Crim. App. 1991); Porter, 93 S.W.3d
at 345.  Here, Deputy Morrison=s uncontroverted testimony was that
the deputies approached the front door to do a Aknock and talk.@[4] 
The trial court made a finding of fact that the deputies went to the
house to do a Aknock and talk,@ and we give deference to that
finding.  See Carmouche, 10 S.W.3d
at 327.  There is no evidence of a sign
or any other directives prohibiting entry onto the property.  Thus, the deputies had a right to approach
the front door to contact the occupants.








While rightfully at the front door, the deputies were free to
observe evidence in Aplain view.@  What a person
knowingly exposes to the public, even in his own home, is not a search subject
to Fourth Amendment protection.  Bower,
769 S.W.2d at 897 (citing Katz v. United States, 389 U.S. 347, 351
(1967)); Long v. State, 532 S.W.2d 591, 594 (Tex. Crim. App. 1975).  A search implies a prying into hidden places
for that which is concealed.  Long,
532 S.W.2d at 594.  The observation of
property in Aplain view@ involves no invasion of privacy.  Walter v. State, 28 S.W.3d 538, 541 (Tex.
Crim. App. 2000); Swarb v. State, 125 S.W.3d 672, 680 (Tex. App.CHouston [1st Dist.] 2003, pet. dism=d); see Long, 532 S.W.2d at
594. 

Nonetheless, appellant suggests that Deputy Morrison=s observation through the front door
window was not a Aplain view@ observation based on the nature of the window.  Appellant asserts that the window was
decorative only and its purpose was to let in light without allowing anyone to
look inside the house.  However, the
window was not made of opaque glass and had no drapes or other covering to
prevent anyone from looking through it.  See
Bower, 769 S.W.2d at 897B98 (finding officers did not conduct a search when they
approached defendants=s front door by the only means of accessBa drivewayBand observed stolen items through
uncurtained windows in the garage); Long, 532 S.W.2d at 593B95 (finding sheriff, who
unsuccessfully attempted to contact occupants while investigating unusual
aircraft activity, did not conduct an illegal search by looking through window
on which blinds were open after smelling marijuana).








Appellant also emphasizes that the window was seventy inches
from the ground, and Deputy Morrison had to stand on his tiptoes to look
through it.  However, A>[t]he police are free to observe
circumstances and evidence that are in >plain view= to the public.  . . . 
That the policeman may have to crane his neck, or bend over, or squat,
does not render the doctrine inapplicable, so long as what he saw would have
been visible to any curious passerby. . .=@ 
Hamilton v. State, 590 S.W.2d 503, 504B05 (Tex. Crim. App. 1979) (quoting James
v. United States, 418 F.2d 1150, 1151 n.1 (D.C. Cir. 1969) (internal
citations omitted)); see Texas v. Brown, 460 U.S. 730, 740 (1983)
(stating fact that officer had to change his position and bend down at an angle
to see heroin-filled balloons in car did not make his observation a search
because the public could have peered into the car from any number of angles); Johnson
v. State, 469 S.W.2d 581, 583B84 (Tex. Crim. App. 1971) (finding
police did not conduct a search when after unsuccessfully attempting to contact
apartment residents, they looked into a window through a two-inch gap between
partially drawn draperies and saw stolen merchandise).  Therefore, the fact that Deputy Morrison
stood on his tiptoes did not transform his Aplain view@ observation into a search because
any curious passerby could have stood on his tiptoes to look through the window
and any curious passerby of sufficient height could have looked through the
window without standing on his tiptoes.  See Sarantopoulos v. State, 629 So.2d 121,
122B23 (Fla. 1993) (finding that officer=s observation of marijuana in
defendant=s yard by standing on tiptoes in adjacent
yard to view over six-foot wooden fence was not an illegal search; defendant
did not create a zone of privacy given that his backyard was protected from
view only as to those who remained on the ground or were unable to see over the
six‑foot fence unaided).

Finally, appellant contends that Deputy Morrison=s use of a flashlight turned his
observation into a search.  However, an
officer=s use of a flashlight to aid his
vision does not transform an otherwise justifiable Aplain view@ observation into a search.  See Brown, 460 U.S. at 739B40; Howard v. State, 599
S.W.2d 597, 600 n.11 (Tex. Crim. App. 1979); Swarb, 125 S.W.3d at 680; see
also Onofre v. State, 474 
S.W.2d 699, 701 (Tex. Crim. App. 1972) (stating that the Aplain view@ doctrine does not go into Ahibernation at sunset.@). 
Consequently, Deputy Morrison=s use of a flashlight to illuminate
appellant=s living room did not transform his Aplain view@ observation into a search.








Accordingly, Deputy Morrison=s Aplain view@ observation of the marijuana and
drug paraphernalia through the front door window was not a search.  We overrule appellant=s first issue.

B.        Entry into the
Backyard

Next, appellant contends that the deputies committed a
trespass or impermissible, warrantless search by entering his backyard and
approaching his back door.  The Fourth
Amendment protections extend to the curtilage of a home.  Oliver v. United States, 466 U.S. 170,
180 (1984); Gonzalez v. State, 588 S.W.2d 355, 360 (Tex. Crim. App.
1979).  ACurtilage@ is the land immediately surrounding
and associated with the home.  State
v. Peyrani, 93 S.W.3d 384, 387 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d). 
However, not every trespass upon the curtilage constitutes a
search.  See Washington v. State,
152 S.W.3d 209, 214B15 (Tex. App.CAmarillo 2004, no pet.); Buchanan v. State, 129 S.W.3d
767, 771B73 (Tex. App.CAmarillo 2004, pet. ref=d); Watts v. State, 56 S.W.3d
694, 699 (Tex. App.CHouston [14th Dist.] 2001), rev=d on other grounds, 99 S.W.3d 604 (Tex. Crim. App.
2003). An officer may enter the curtilage of a house in an effort to contact
its occupant when the occupant has not manifested his intent to restrict access
by locking a gate or posting signs informing the officer he is not invited or
the officer does not deviate from the normal path of traffic.  Washington, 152 S.W.3d at 215; Buchanan,
129 S.W.3d at 773.








Several courts have found that no search occurs when police
officers approach the back door of a home merely to contact the residents after
they have first tried the front door and received no answer.  See Gonzalez, 588 S.W.2d at 357B60 (finding that game warden=s initial action in approaching back
door after receiving no response at front door did not constitute a search);
Long, 532 S.W.2d at 593B95 (holding that sheriff who knocked at the front door of
home and received no answer, then knocked at the back door and also received no
answer, and then while returning to his car, smelled marijuana though an open
window, did not conduct a Asearch@); Watts, 56 S.W.3d at 700B01 (holding officers did not conduct
a search when after receiving no answer at front door, they went to the back
door to knock and observed raw sewage at issue); cf. Peyrani, 93
S.W.3d at 387B88 (upholding ruling that officers
conducted an unconstitutional, warrantless search when they failed to knock at
the front door and instead walked around to the fenced backyard and observed
marijuana).  Here, Deputy Morrison=s uncontroverted testimony was that
the deputies went to the back of the house to see if there were any persons in
the house after knocking on the front door and receiving no answer.  The trial court made a finding of fact that
Deputy Morrison went to the backyard to contact the occupants, and we give
deference to that finding.  See
Carmouche, 10 S.W.3d at 327. 

Nevertheless, appellant asserts that the deputies= entry into his backyard was
impermissible because he had restricted access to the backyard, and, thus, had
an expectation of privacy.  Rudy Vargas,
an investigator hired by appellant, viewed the property approximately six
months after the incident.  He testified
that a gated, chain-link fence blocked access to the side yard, and another
gated, chain-link fence blocked access from the side yard to the backyard.  Appellant averred by affidavit that he could
not recall whether the gate to the side yard was closed on the night of this
incident, but the gate on the fence between the side yard and backyard is
always closed to prevent his dog from escaping. 
Appellant presented photographs and a videotape purporting to show the
fences at issue.

In contrast, Deputy Morrison testified there were no fences
restricting access to the backyard on the night of the incident; specifically,
the fences depicted in the photographs were not present that night.  In its findings of fact, the trial court
found that Deputy Morrison was credible and Vargas and appellant were not
credible.  Moreover, after reviewing the
condition of the fence depicted in the photographs and video, the trial court
found that the fence had been erected after the search warrant was
executed.  Because the trial court was
the sole judge of the credibility of the witnesses, we give deference to its
determination that there were no fences restricting the deputies= access to the backyard.  See id.








Consequently, because the deputies had unrestricted access to
the backyard, they did not trespass or conduct a search when they approached
the back door to contact the occupants. 
Finally, while the deputies were at the back door, Deputy Morrison had a
clearer view through the back patio door of the marijuana and drug
paraphernalia on the living room coffee table, smelled marijuana from an air
conditioning unit, and saw a marijuana-growing lab through a partially-covered
broken window.[5]  Because the deputies were permissibly at the
back door, Deputy Morrison=s Aplain view@ observations do not constitute searches.  We overrule appellant=s second issue.

C.        Entry into the
House

In his third issue, appellant complains that the deputies
entered his house without a warrant.  In
response, the State argues that the deputies were justified in entering the
house pursuant to the Aemergency doctrine.@ 
See Brimage v. State, 918 S.W.2d 466, 500B01 (Tex. Crim. App. 1996) (op. on reh=g) (recognizing that pursuant to the
emergency doctrine, the Fourth Amendment does not bar police officers from
making warrantless entries and searches when they reasonably believe that a
person within is in need of immediate aid). 
We need not decide whether the deputies were justified in entering
appellant=s house pursuant to the emergency
doctrine because Deputy Morrison=s affidavit did not include any
observations made while inside the house. 
The affidavit outlined only his observation through the front door
window and his observations while outside the back door.  Therefore, the search warrant was not based
on any observations made while the deputies were inside the house.[6]  Accordingly, we overrule appellant=s third issue.








D.        Validity of
the Search Warrant

In his fourth issue, appellant contends that the search
warrant was invalid because Deputy Morrison=s affidavit contained information
obtained in violation of the Fourth Amendment and misrepresentations as argued
in appellant=s first three issues.  Because we have rejected these arguments, we
overrule his fourth issue.  Therefore,
the trial court did not err by denying appellant=s motion to suppress.

Accordingly, the judgment of the trial court is affirmed.

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Opinion filed August 16, 2005.

Panel consists of
Justices Anderson, Frost and Seymore.

Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  Appellant presented
evidence that the window was seventy inches from the ground.





[2]  The Court of
Criminal Appeals recently articulated an exception to the general standard for
reviewing a ruling on a motion to suppress. 
Swearingen v. State, 143 S.W.3d 808, 810B11 (Tex. Crim. App. 2004).  A magistrate=s
determination of probable cause to issue a search warrant should be given great
deference and not reviewed de novo based on the Fourth Amendment=s strong preference for searches conducted pursuant to
a warrant and the need for an incentive to encourage police to use the warrant
process.  Id.  Thus, a distinction exists between the
standards of review applicable to warrantless searches and searches pursuant to
a search warrant.  Id. at
811.  Here, appellant does not challenge
whether the magistrate had probable cause to issue the search warrant based on
Deputy Morrison=s affidavit as a whole.  Instead, he contends there was no probable
cause because the information in Deputy Morrison=s
affidavit was obtained through impermissible, warrantless searches and must be
excised.  Therefore, we will apply the
bifurcated standard of review applicable to warrantless searches.





[3]  At the
motion-to-suppress hearing, appellant presented evidence that due to the
location of the coffee table, Deputy Morrison would not have been able to see
the contraband on the table.  However, on
appeal, appellant no longer argues that the contraband was not visible.  Instead, he argues that Deputy Morrison=s observation of the contraband was, nonetheless, an
impermissible search.





[4]  Appellant
asserts Deputy Morrison did not have Aprobable
cause@ to approach the house based on the Atip@ he received from the vehicle passenger.  However, appellant cites no authority that an
officer must have probable cause merely to approach the front door of a home to
contact the residents.  Appellant also
asserts that Deputy Morrison admitted he went to appellant=s house on an Aexploratory
quest@ for evidence of drug activity. However, although
Deputy Morrison testified that he originally hoped to discover drug activity
when he went to the house, he also testified that he approached the front door
to contact the occupants. 





[5]  In his
affidavit supporting the search warrant, Deputy Morrison gave further details
about the marijuana-growing lab.  He saw
approximately one hundred marijuana plants and heard a generator; based  on his training and experience, generators
are used to grow large amounts of marijuana in enclosed structures. 





[6]  Further, the
deputies did not discover any additional contraband while they were inside the
house before the search warrant was obtained.  Although they saw the marijuana-growing lab
while inside the house, they had previously observed the lab from outside the
house.