Opinion filed September 25, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed September
25, 2008

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00018-CR        

                                                     __________

 

KARL KEITH NOLAND, Appellant

 

V.

 

STATE OF TEXAS, Appellee

 

 

 



 

On Appeal from the 142nd District Court

 

 Midland County, Texas

 

Trial Court Cause No. CR30880

 



 

                                              M E
M O R A N D U M   O P I N I O N

The
jury found Karl Keith Noland guilty of the offenses of aggravated sexual
assault of a child and indecency with a child by contact as alleged in two
counts of the indictment.  That jury assessed his punishment at confinement for
twenty-five years and twenty years respectively and a $10,000 fine in each
count.  The trial court ordered that the sentences run consecutively.  We
affirm.








In
his first two issues on appeal, Noland argues that the evidence is legally and
factually insufficient to support the verdict on either offense.

To
determine if the evidence is legally sufficient, an appellate court reviews all
of the evidence in the light most favorable to the verdict and determines
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319 (1979); Jackson v. State, 17 S.W.3d 664, 667 (Tex. Crim. App.
2000).  To determine if the evidence is factually sufficient, an appellate
court reviews all of the evidence in a neutral light.  Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v.
State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23
S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404,
407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).  Then, the reviewing court determines whether the
evidence supporting the verdict is so weak that the verdict is clearly wrong
and manifestly unjust or whether the verdict is against the great weight and
perponderance of the conflicting evidence.  Watson, 204 S.W.3d at
414-15; Johnson 23 S.W.3d at 10-11.  The factfinder is the sole judge of
the credibility of the witnesses and the weight to be given to their
testimony.  Adelman v. State, 828 S.W.2d 418 (Tex. Crim. App. 1992).

Lloyd
Malcolm McSpadon owned a computer shop in College Station.  In April 2005,
Noland called McSpadon to see if he could bring his computer in to be
repaired.  During that conversation, Noland asked McSpadon what would happen if
it were discovered that he had something illegal on his computer.  McSpadon
thought that Noland was talking about pornography, and he told Noland that it
was not illegal to have pornography on his computer.  Noland replied, AWell, my pornography is.@  McSpadon told Noland, AWell, let=s just say that I won=t look.@  Noland took his computer
to McSpadon the following day and told him that he needed to get it back as
soon as possible.








While
McSpadon was checking out the computer, he began to notice the names of some of
the files on the computer.  The names of the files were names one would
associate with child pornography, and McSpadon called the FBI.  Through the
FBI, contact was made with the College Station Police Department, and Detective
Brandy Norris with that department began an investigation.   From the
information that had been given to her, Detective Norris was able to get a
search warrant for Noland=s
computer.  When Detective Norris originally seized the computer, she turned it
over to Detective Nathan McCune, who was trained in computer forensics. 
Detective McCune copied files from Noland=s
computer onto a disk; the computer contained A[v]ery
hard core child pornography.@ 
Detective Norris looked at 1,503 computer files that involved children, sexual
acts, and some animals.  Based upon the information discovered on the computer,
Detective Norris obtained an arrest warrant for Noland.  She asked McSpadon to
cooperate with them to conclude the case, and he agreed.  McSpadon called
Noland and told him that his computer was ready and to come after it.  When
Noland went to McSpadon=s
shop, the police were there but were not visible.  Noland paid McSpadon and
left the shop.  When Noland left the shop with his computer, the police
arrested him.

Detective
Norris questioned Noland about the child pornography.  At one point, Detective
Norris asked Noland whether he had ever touched a child in a sexual manner. 
Noland said that he had: his sister, when she was young, and a niece.  In the
course of the interview, Noland described events from 2002 that form the basis
of the charges in this case.








The
testimony shows that, sometime during Easter weekend 2002, Lenda Kay Robinson
and her two daughters, W.R. and C.R., went from their home in Andrews to
Midland to visit Theresa Williams, Lenda=s
sister.  Lenda did not drive, and Theresa and her husband drove them from
Andrews to Midland in their van.  Noland, who lived in Kosse and who was Lenda=s half-brother, was in the
vehicle with them.  During the trip, Noland told W.R. to sit in his lap.  W.R.
said that Noland put his hand between her legs; she moved it away more than
once but he would put it back.  When they returned to Midland, they went to a
restaurant.  Later, they began to look for a hotel to stay in for the night. 
They went back to Theresa=s
house and visited for a while.  Noland, Lenda, and the girls returned to the
hotel in Noland=s
pickup.  Noland had rented only one room, and it was decided that Lenda and the
two girls would sleep in one bed and Noland in the other.  W.R. instead laid on
the floor to sleep.  At some point in time, Noland told W.R. to get in the bed
with him.  W.R. testified that Noland asked her if he could take off his
jeans.  He took them off and was wearing only his underwear.  W.R. described
how Noland began to touch her under her panties and inside her Aprivates.@  He also put her hand on
his penis inside his underwear and moved her hand Aback and forth.@ 
Later, W.R., who was ten years old at the time of the offense, got into bed
with her mother.  Nothing was said about the incident until Lenda and her two
daughters returned home to Andrews.  Although W.R. told her mother what her AUncle Keith@ had done to her, they
decided not to tell W.R.=s
father for fear of what he might do.  

In
the interview with Detective Norris, Noland said that W.R. Aresponded@ when he started touching
her in that Midland hotel.  He told the detectives that she was the one who
pulled her panties down and that he was rubbing up and down on her to Asee if she would respond.@  Noland said that, when
W.R. said to quit, he quit.  Although he rubbed up and down on Ait,@ Noland stated that he never penetrated her.

Detective
Norris told how she went about finding Lenda, W.R., and C.R.  After she had
determined that Midland police had jurisdiction in this case, Detective Norris
turned the investigation over to them.

Officer
Richard Candelaria with the Midland Police Department was the officer whom
Detective Norris contacted.  After that telephone call, he began an
investigation.  One of the things that Officer Candelaria did was to set up an
appointment between W.R. and personnel at the Child Advocacy Center in Midland. 
Based upon his investigation, the information furnished to him by Detective
Norris B including
Noland=s statements,
and his observation of the interview between W.R. and the specialist at the
Child Advocacy Center, Officer Candelaria obtained a warrant, and Noland was
arrested.

When
we review the evidence in the light most favorable to the verdict, we hold that
a rational trier of fact could have found the elements of both offenses beyond
a reasonable doubt.  The evidence is legally sufficient.  When we review all of
the evidence in a neutral light, we hold that the evidence supporting the
verdict is not so weak that the verdict is clearly wrong and manifestly
unjust.  Furthermore, the verdict is not against the great weight and
preponderance of the conflicting evidence.  The evidence is factually
sufficient.  Noland=s
first two issues on appeal are overruled.








Noland
next complains that the trial court erred when it overruled his motion to
suppress and allowed the jury to consider two separate statements that he made
to Detective Norris and when it admitted evidence of the child pornography
found on his computer.  The trial court=s
ruling on the motion to suppress is somewhat difficult to follow because,
despite his own attorney=s
efforts and those of the trial court, Noland continually interrupted the trial
court, including during the trial court=s
ruling on the motion to suppress. The trial court remained patient throughout
Noland=s outbursts
even after Noland said, AAnd
I=m gonna be out some
day, Your Honor, and I=ll
look you up.@

First,
Noland appears to argue that, when he was being questioned in College Station,
he said he wanted a lawyer and that the police should not have questioned him
further.  Noland testified at the hearing on the motion to suppress.  During
his testimony, Noland said that he was aware of his right to have an attorney,
but AI did not
exercise that right at all.@ 
He said that he understood that he had the right to talk to an attorney first
and that he was giving up that right.  He agreed to talk to the officers.  It
had been determined that he was not indigent.  Noland had said that he was
going to talk to a lawyer, that he had Alawyered-up,@ and that his main concern
with talking to a lawyer was in regard to making bond.  He had not retained a
lawyer.  Even after saying that he wanted to talk to an attorney, he agreed to
talk to the officers.  He testified that both statements were free and
voluntary statements.

When
a trial court rules on a motion to suppress, we review that ruling for an abuse
of discretion.  State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App.
2006).  On appeal, an appellate court views the record in the light most
favorable to the trial court=s
ruling.  Id.  We will reverse the judgment only if the ruling is outside
the zone of reasonable disagreement.  Id.  If the ruling is reasonably
supported by the record and if it is correct on any theory of law applicable to
the case, we will sustain it. Id.  We give almost total deference to a
trial court=s
determination of historical facts, and we review de novo the trial court=s application of the law to
those facts.  Id.  








Since
Miranda v. Arizona, 384 U.S. 436 (1966), an accused has enjoyed a Fifth
and Fourteenth Amendment right to have counsel present during a custodial
interrogation.  That right attaches only when affirmatively invoked by the
accused.  See Miranda, 384 U.S. at 473‑74.  When one invokes that
right, it must be clear and unambiguous; it takes more than the use of the
words Aattorney@ or Alawyer@
to invoke the right to counsel.  Dinkins v. State, 894 S.W.2d 330, 351
(Tex. Crim. App. 1995).  An accused invokes the right to counsel when he
indicates that he wants to speak to an attorney or that he wants to have an
attorney present during questioning.  Lucas v. State, 791 S.W.2d 35, 45
(Tex. Crim. App. 1989).  In order to determine whether an accused=s statement is an
invocation of the right to counsel, we look at the totality of the
circumstances surrounding the interrogation and alleged invocation.  Dinkins,
894 S.W.2d at 351.  We make the determination from the standpoint of a
reasonable officer.  The question is: Would a reasonable officer under similar
circumstances have understood the accused=s
statement as a request for an attorney or merely one that might be invoking the
right to counsel?  Id.

Here,
not only did Noland not ask for an attorney in connection with the giving of
his statements, he affirmatively waived those rights and testified that he
did.  The trial court did not err when it admitted the statements.  Issue on
Appeal No. 3(a) is overruled.

Noland
asserts that the search and seizure in connection with his computer and the
child pornography violated his right to privacy and his rights under the Fourth
Amendment to the United States Constitution as well as Article I, section 13 of
the Texas Constitution.[1]  Noland says
that his specific argument is that McSpadon, the computer technician to whom
Noland took his computer for repairs, was an agent for the State and that he
is, therefore, entitled to the protections afforded by those constitutional
provisions.  

Unreasonable
searches and seizures are prohibited by the Fourth Amendment to the United
States Constitution and by Article I, section 9 of the Texas Constitution.  The
protections afforded against unreasonable searches and seizures do not apply
when the search or seizure is purely private.  Dawson v. State, 106
S.W.3d 388, 391 (Tex. App.CHouston
[1st Dist.] 2003, no pet.).  If a search or seizure is made by a private
person, there are two factors to consider in determining whether that person is
acting privately or as an agent of the State.  The first is whether the
government knew of and acquiesced in the intrusive conduct.  The second factor
for us to consider is whether the person intended to assist law enforcement or
whether he intended to further his own cause.  Stoker v. State, 788
S.W.2d 1, 11 (Tex. Crim. App. 1989).  








McSpadon=s first discovery of the
child pornography on Noland=s
computer occurred before there were any law enforcement personnel involved. 
Therefore, the government did not know and did not acquiesce in his actions. 
Furthermore, McSpadon was not intending to assist law enforcement when he
discovered the child pornography on Noland=s
computer; he was trying to repair it as Noland had asked him to.  McSpadon was
not acting as an agent of the State.  Because McSpadon was not acting as an
agent of the government, the protections otherwise afforded by the  United
States Constitution as well as Article I, section 9 of the Texas Constitution
are not implicated.            Additionally, the purpose of the Fourth
Amendment and Article I, section 9 of the Texas Constitution is to provide
protection of a person=s
Alegitimate
expectation of privacy from unreasonable governmental intrusions.@   McArthur v. State,
1 S.W.3d 323, 329 (Tex. App.CFort
Worth 1999, pet. ref=d). 
Even if McSpadon were an agent of the State, Noland must show that he had an actual,
subjective expectation of privacy in the child pornography discovered on his
computer and that his expectation of privacy was one that society would accept
as reasonable.  Wilson v. State, 99 S.W.3d 767, 770 (Tex. App.CHouston [14th Dist.] 2003,
pet. ref=d).  The
Texas Court of Criminal Appeals has set out the following as a non-exhaustive
list of relevant factors to consider when we determine whether society would
accept the subjective expectation of privacy as reasonable:  

(1)
whether the accused had a property or possessory interest in the place
invaded;  (2) whether he was legitimately in the place invaded; (3) whether he
had complete dominion or control and the right to exclude others; (4) whether,
prior to the intrusion, he took normal precautions customarily taken by those
seeking privacy;  (5) whether he put the place to some private use; and (6)
whether his claim of privacy is consistent with historical notions of privacy.

Granados v.
State, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002).

Noland
asked McSpadon to repair his computer.  He placed no restrictions on what
McSpadon could do, just that he wanted it back as soon as possible.  Further,
Noland did not take any precautions that would customarily be taken by one
seeking privacy.  To the contrary, he told McSpadon that there was illegal
material on the computer.  We also note that society would not accept as
objectively reasonable an expectation of privacy in that which Noland
voluntarily turned over to a third party.  See Rogers v. State, 113
S.W.3d 452, 457-58 (Tex. App.CSan
Antonio 2003, no pet.).  Noland=s
Issue on Appeal No. 3(b) is overruled.

In
his fourth issue on appeal, Noland maintains that the trial court abused its
discretion when it ordered that his sentences be served consecutively. 
Specifically, Noland argues that his punishment was cruel and unusual in
violation of the Eighth Amendment to the United States Constitution and Article
I, section 13 of the Texas Constitution.  








Noland
makes this claim for the first time on appeal.  He did not object to the
sentences allegedly violating his state or federal constitutional rights when
he was sentenced or in posttrial motions.  The issue is not preserved for
appellate review.  See Hergert v. State, 197 S.W.3d 394, 399 (Tex. App.CBeaumont 2006, no pet.); see
also Tex. R. App. P. 33.1.  

Even
if Noland had preserved his complaint, he could not succeed.  In this case, Tex. Penal Code Ann. ' 3.03(b)(2)(A) (Vernon
Supp. 2008) provides for consecutive sentences.  See also Tex.
Code Crim. Proc. Ann. art. 42.08 (Vernon 2006).  Under the facts of this
case, the trial court is given the option of choosing whether the sentences run
concurrently or consecutively for convictions for multiple acts arising out of
the same criminal episode.  Citing to Solem v. Helm, 463 U.S. 277, 292
(1983), the court in Williamson analyzed a grossly disproportionate
sentencing claim by examining A(1)
the gravity of the offenses and the harshness of the penalty, (2) the sentences
imposed on other criminals in the same jurisdiction, and (3) the sentences
imposed for commission of the same crime in other jurisdictions.@  Williamson v. State,
175 S.W.3d 522, 525 (Tex. App.CTexarkana
2005, no pet.).  We do not examine the last two factors unless we find that the
sentence is grossly disproportionate to the offenses for which convictions were
had.  Id.  Under the evidence presented in this case, we cannot say that
the Astacking@ of the sentences results
in grossly disproportionate punishment for the offenses for which the jury
convicted Noland.  Moreover, Noland presented no evidence of how his sentences
compared with others in connection with like offenses in the same or other
jurisdictions.  Noland has not shown that the Astacking@ of his sentences resulted
in grossly disparate sentences, and his fourth issue on appeal is overruled.








In
his fifth issue on appeal, Noland raises the Fifth Amendment and the Fourteenth
Amendment to the United States Constitution claims and asserts that the trial
court violated those provisions when it ordered that his sentences would be
served consecutively.  In making this claim, Noland cites us to Apprendi v.
New Jersey, 530 U.S. 466 (2000).  Apprendi stands for the
proposition, among others, that any fact that increases the punishment for a crime
beyond the maximum punishment statutorily provided for that crime must be
submitted to the factfinder and proved beyond a reasonable doubt.  Apprendi,
530 U.S. at 490.  Apprendi is not violated in those situations where a
trial court orders the cumulation of sentences, each of which lies within the
statutory range of punishment, but in which the cumulative total exceeds the
statutory maximum for any single offense.  Marrow v. State, 169 S.W.3d
328, 330 (Tex. App.CWaco
2005, pet. ref=d). 
This court also has so held in an unpublished opinion.  See Bray v. State,
Nos. 11‑03‑00364‑CR & 11-03-00365-CR, 2005 WL 283549, at
*4 (Tex. App.CEastland
Jan. 31, 2005, no pet.) (not designated for publication).  Each of the
sentences lies within the statutory range of punishment, and the trial court
did not err when it cumulated Noland=s
sentences. We overrule Noland=s
fifth issue on appeal.

We
affirm the judgment of the trial court.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

September 25,
2008

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,


McCall, J., and Strange, J.









[1]We will assume that Noland=s claim was inadvertently and unintentionally stated as
being made under Article I, section 13 of the Texas Constitution rather
than Article I, section 9.